**CITY OF SACRAMENTO, a municipal corporation, Plaintiff,**

**v.**

**SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON, D. C.; Henretta Simmons; Does 1 through 100, inclusive, Defendants.**

**Civ. No. S–2373.**

United States District Court,
E. D. California.
May 22, 1972.

James P. Jackson, City Atty., City of Sacramento, David W. McMurtry, Asst. City Atty., Sacramento, Cal., for plaintiff.

Dwayne Keyes, U. S. Atty., Richard W. Nichols, Asst. U. S. Atty., Sacramento, Cal., for defendants.

## MEMORANDUM AND ORDER

MacBRIDE, Chief Judge.

This action is an attempt by the City of Sacramento to condemn real property held in the name of the Secretary of Housing and Urban Development. Although it was originally filed in Sacramento County Superior Court, the Secretary removed it here under 28 U.S.C. § 1442(a) and immediately moved to dismiss it on the ground of sovereign immunity. Contending that it was illegally removed, the City filed a cross-motion to remand the action to the state tribunal. For reasons to be explained, I have determined that the doctrine of sovereign immunity does indeed bar the action. Accordingly, I grant the government's motion to dismiss and deny the City's motion to remand.[1]

I begin by noting the fundamental proposition that property belonging to the United States, whether used for "governmental" or "non-governmental" purposes, cannot be condemned without Congress' consent. Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L. Ed. 235 (1939); Utah Power & Light Co. v. United States, 230 F. 328 at 335–339 (8th Cir. 1915). As the parties recognize, this rule is simply an application of the broader principle of sovereign immunity, which shields the United States from suits it has not authorized. Since the National Housing Act itself permits the Secretary "to sue and be sued," however, the question which these motions raise is whether Congress has waived the government's immunity with respect to actions brought to condemn property held by the Secretary in his official capacity.

The final sentence of 12 U.S.C. § 1702, a part of the National Housing Act, provides that

The Secretary shall, in carrying out the provisions of this subchapter and

1. The City argues that I should determine whether the action was properly removed *before* resolving the sovereign immunity issue, although it concedes "that the Court may decide these issues in whichever manner it chooses." As a general proposition, the suggestion is good, for a Court's "first order of business" is normally to determine its own jurisdiction. See 1A Moore's Federal Practice 1433–34. Since sovereign immunity is itself a jurisdictional issue and would prevent suit in either state or federal court, however, it seems to me that this overriding issue should be resolved first.

subchapters II, III, V, VI, VII, VIII, X, IX–A, and IX–B, of this chapter, be authorized in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.

In F.H.A. v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), the Supreme Court pointed out that the power given in this section to sue the Secretary should be "liberally construed" and denied only in suits which are clearly "not consistent with the statutory or constitutional scheme." Since the section by its terms applies only to activities of the Secretary "in carrying out the provisions" of the designated subchapters, however, the Court acknowledged Congress' desire to confine the Secretary's authority to sue and be sued to actions *related* to his official functions. In subjecting the Secretary to wage-garnishment proceedings brought by creditors of F.H.A. employees, it thus specifically found the action to be related to the Secretary's power under subchapter 1 of the Act to make employment contracts. Given the Court's approach in *Burr* therefore, the City's eminent domain action can succeed if, liberally viewed, it relates to one or more of the subsections under which the Secretary may sue or be sued.

Viewed in perspective, the City's action falls clearly outside of the consent to suit. The purpose of the National Housing Act is to promote the construction and purchase of residential housing by creating an extensive system of insuring home mortgages. Each of the ten subchapters under which the Secretary may sue or be sued promotes this basic scheme. Eight authorize the Sec-

retary to insure mortgages for particular types of housing and other developments,[2] one establishes a government corporation to purchase and sell federally-insured mortgages on the secondary market,[3] and the tenth simply contains miscellaneous administrative rules.[4] None of these sections suggests even the remotest relationship between the Secretary's duties and the City's asserted right of condemnation. Had Congress intended to waive immunity with respect to actions so entirely foreign to the purposes of the Act, it would have done so explicitly, as it did in permitting local government to tax real property held by the Secretary. See 12 U.S.C. §§ 1706b, 1714, 1741, 1747j, 1749kk, 1749bbb—20, 1750e. The City's action, in short, simply stretches the waiver of immunity far beyond its purpose.

The opinion which the City cites in support of its position, Riordan v. Ferguson, 147 F.2d 983 (2nd Cir. 1945), offers no real help. In that case, the Court apparently held that the Secretary may be sued in an action to foreclose a mortgage on real property to which he has succeeded after the mortgagor's default on a federally-insured loan. Since the Act gives the Secretary authority to acquire title in this manner, an action by competing lien holders to establish priorities may very well "relate" to his official duties, thus satisfying the *Burr* approach. But the City brought this action not because of anything the Secretary may have done in carrying out his responsibilities, but only because the property it wants happens to have fallen into the Secretary's hands. Under the Act, this is simply not enough to subject the Secretary to the City's suit.

---

2. Subchapter I, 12 U.S.C. § 1702 et seq. (insurance for loans made to renovate existing structures); subchapter II, 12 U.S.C. § 1707 et seq. (basic mortgage insurance for single family homes); subchapter VI, 12 U.S.C. § 1736 et seq. (mortgage insurance for veterans); subchapter VII, 12 U.S.C. § 1747 (mortgage insurance for rental housing); subchapter VIII, 12 U.S.C. § 1748 (mortgage insurance in areas adjacent to military bases); subchapter X, 12 U.S.C. § 1750 (mortgages in "critical defense housing areas"); subchapter IX–A, 12 U.S.C. § 1749aa (mortgage insurance for development of new communities); and subchapter IX–B, 12 U.S.C. § 1749aaa (mortgage insurance for private medical facilities).

3. Subchapter III, 12 U.S.C. § 1716.

4. Subchapter V, 12 U.S.C. § 1731.