**BOR–SON BUILDING CORPORATION,**
Appellant,

v.

**Keith R. HELLER et al., Appellees.**

**No. 77–1632.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1978.

Decided March 8, 1978.

---

Before GIBSON, Chief Judge, VAN OOS-TERHOUT, Senior Circuit Judge, and ROSS, Circuit Judge.

VAN OOSTERHOUT, Senior Circuit Judge.

This appeal from the United States District Court for the District of Minnesota presents a number of related jurisdictional issues under a number of federal statutes. The underlying dispute between the parties arose in connection with the "Cedar-Riverside New Town in Town" housing project in Minneapolis. The beleaguered history of this project is summarized in our recent opinion in *Cedar-Riverside Environmental Defense Fund v. Hills,* 560 F.2d 377 (8th Cir. 1977).

Appellant Bor-Son Building Corporation (Bor-Son) commenced this action on June 11, 1975, with the filing of a six-count complaint in the District Court of Hennepin County, Minnesota. Named as defendants were the Secretary of the United States Department of Housing and Urban Development (the Secretary) and various other parties, including five whom we collectively refer to as the Developer defendants.[1] All six counts of the complaint were factually related to the failure of the Developer defendants to make final payment of $250,-000 [2] as required by contracts under which Bor-Son had performed general construction work on Stage I of the Cedar-Riverside project. The complaint sought foreclosure on certain alleged mechanic's liens as well as money damages.

On September 5, 1975, within thirty days of service of process upon her, the Secretary removed the action to United States District Court. After removal Bor-Son sought leave to amend its complaint in order to state with more clarity its allegations against the Secretary. The proposed amendment contained six new claims, all related to the same deficiency in final pay-

Russell C. Brown, St. Paul, Minn., argued and filed brief, for appellant.

Stephen G. Palmer, Asst. U.S. Atty., Minneapolis, Minn., argued for appellees; Andrew W. Danielson, U.S. Atty., Minneapolis, Minn., Richard J. Flando and John H. Mahoney, Dept. of Housing & Urban Development, Chicago, Ill., Green, Merrigan & Johnson, Minneapolis, Minn., on brief.

1. The five Developer defendants are: Keith R. Heller, Cedar-Riverside Associates, Inc., Cedar-Riverside Properties, Stage I Land Company and Cedar-Riverside Land Company.

2. The complaint originally sought $374,237. As a result of subsequent events, the amount was reduced to $250,000.

ment as alleged in the original complaint. The Secretary resisted Bor-Son's request for leave to amend and moved to dismiss the original complaint as against her—all on the ground that the court lacked subject matter jurisdiction over any of the claims against her.

By unreported opinion and order dated July 21, 1977, the district court determined that it lacked jurisdiction over any of the claims against the Secretary in either the original complaint or the proposed amendment. It accordingly denied Bor-Son's motion for leave to amend, granted the Secretary's motion to dismiss as against her, and, because these rulings resolved the facet of the case upon which the removal was predicated, ordered the cause as to the remaining defendants remanded to the Hennepin County District Court.

The court certified its denial of leave to amend and its dismissal as to the Secretary for discretionary interlocutory review under 28 U.S.C. § 1292(b), and we authorized the appeal by order dated August 16, 1977.[3] The district court stayed execution of its judgment pending disposition of the appeal.

For the reasons stated below, we affirm the rulings of the district court with respect to Counts I, II, VI, IX, X, XI and XII and reverse the rulings of the district court with respect to Counts III, IV, V, VII and VIII.

I.

A brief recitation of some essentially undisputed facts and of the material allegations of the original complaint and proposed amendment is essential to our disposition of the appeal.

On or about February 23, 1972, Bor-Son entered into four contracts with Stage I Land Company under which Bor-Son agreed to perform certain general construction work on the Cedar-Riverside project. On February 24, 1972, pursuant to Sections 220 and 236 of the National Housing Act, as amended, 12 U.S.C. §§ 1715k & 1715z–1, mortgage notes covering construction loans were initially endorsed by the Secretary. By endorsement the Secretary became obligated to insure the mortgagees to the extent of approved disbursements in the event of default by the mortgagor.

Pursuant to the contracts, Bor-Son furnished labor, materials and equipment up to and including June 12, 1974. On June 25–26, 1974, Bor-Son filed mechanic's lien statements with respect to such work with the Hennepin County Recorder of Deeds.

The total cost of the work performed by Bor-Son under the contracts exceeded twenty-three million dollars. As of July 2, 1974, when Stage I final closing occurred, $1,618,717.66 remained owing to Bor-Son on this sum. At closing $1,368,717.66 was disbursed to Bor-Son. One week later an unsecured promissory note for the $250,000 balance, with maturity date of December 31, 1974, was delivered to Bor-Son by Cedar-Riverside Properties. Bor-Son delivered a written satisfaction of the mechanic's liens previously filed.

On July 9, 1974, the Secretary finally endorsed the four mortgage notes in the total amount of nearly twenty-eight million dollars. As a result of defaults on the mortgages, the Secretary has subsequently acquired the mortgages under assignment from the mortgagees.

Cedar-Riverside Properties is allegedly in default on the $250,000 promissory note. It is this sum which Bor-Son now seeks to recover.

As already noted, Bor-Son's original complaint was in six counts. Count I alleged that Bor-Son was induced to execute the above-mentioned lien satisfactions on the basis of fraudulent representations by defendants that Bor-Son would ultimately be paid in full. Count I sought expungement of the satisfactions from the record, rein-

---

**3.** An argument could be made that the denial of leave to amend and the dismissal are, in the unusual posture in which this case comes to us, final for purposes of appellate review under 28 U.S.C. § 1291. We do not pause to consider this possibility, however, because regardless of whether the appeal is denominated final or interlocutory it is nonetheless properly before us.

statement of the liens, an adjudication of the validity and priority of all liens and encumbrances on the property in question, and foreclosure. Count II sought monetary recovery on the underlying contracts, and Count III sought similar recovery in quantum meruit. Count IV sought impressment of an equitable lien on the property, together with foreclosure. Count V alleged that defendants had under their control "a source of funds for the payment of the project construction costs" and sought to have a constructive trust imposed thereon for the use and benefit of Bor-Son. Count VI sought recovery on the promissory note.

Count VII, the first count of the proposed amendment, alleged that, because Bor-Son's improvements were intended for the accomplishment of the goals of national housing policy, the Secretary had been unjustly enriched and was accordingly liable to Bor-Son in quasi-contract. Count VIII alleged that the Secretary was engaged in a joint venture with the Developer defendants and was accordingly jointly and severally liable with them for the venture's debts. Count IX sought reformation of the closing documents on the theory that either the defendants misrepresented or all parties were mistaken about the present or future ability of the Developer defendants to pay Bor-Son in full. Counts X, XI and XII sounded in tort, and no issue is raised concerning them.

## II.

■ We agree with the district court that it lacked jurisdiction over the claims against the Secretary asserted in Counts I, II, VI, IX, X, XI and XII, and we affirm the action of the district court with respect to each of them. With the exception of Counts II and VI, as to which there is no challenge on appeal,[4] the claims asserted in

these counts sounded in tort, and the exclusive remedy for such claims is the one provided by the Federal Tort Claims Act.

■ It is fundamental that the United States, as sovereign, is immune from suit save as it consents to be sued and that the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Peterson v. United States,* 428 F.2d 368, 369 (8th Cir. 1970). As to claims sounding in tort, the remedy under the Federal Tort Claims Act is exclusive, and this is expressly so despite the statutory authority of any federal agency "to sue and be sued." 28 U.S.C. §§ 1346(b) & 2679(a).

■ The district court properly concluded it lacked jurisdiction over tort claims asserted by Bor-Son because Bor-Son did not file a timely administrative claim as required by 28 U.S.C. § 2675(a). See also 28 U.S.C. § 2401(b) and *Peterson v. United States, supra* at 369. The court also properly observed that all claims for misrepresentation are absolutely barred by 28 U.S.C. § 2680(h). *Thompson v. United States,* 408 F.2d 1075, 1081 (8th Cir. 1969).

Bor-Son does not challenge the application of the above statutory provisions to Counts X, XI, and XII. Bor-Son does contend, however, that Counts I and IX do not sound in tort. Like the district court, we are convinced they do.

Bor-Son contends that Count I asserts a statutory claim for foreclosure of a mechanic's lien under Minnesota law. Such a claim, it is urged, may be properly asserted against the Secretary under 28 U.S.C. § 2410[5] and properly removed by the Secretary under 28 U.S.C. § 1444.[6] Furthermore,

---

4. Counts II and VI were claims for breach of contract. The Secretary was not alleged to be a party to the contracts.

5. In pertinent part this section provides: "Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having

jurisdiction of the subject matter—* * * (2) to foreclose a mortgage or other lien upon * * real or personal property on which the United States has or claims a mortgage or other lien."

6. This section provides: "Any action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the

the argument runs, the district court has jurisdiction over such claim under a number of statutes, including Section 1444.[7]

■ The Secretary at first agreed with Bor-Son that Count I asserted a claim under Section 2410; indeed, the removal petition so stated and cited Section 1444 as the proper authority for removal.[8] However, the Secretary later took the position, sustained by the district court, that Count I in fact asserted a tort claim.

Count I without doubt contains many of the indicia of a foreclosure action. Nevertheless, it shows on its face that written satisfactions have been delivered with respect to all liens on which foreclosure is sought. These satisfactions are said to have been induced by fraudulent representations that Bor-Son would be paid the entire amount claimed due. Plainly, Bor-Son seeks more than foreclosure on a lien. The language of Section 2410 contemplates, at a minimum, a valid and subsisting lien upon which foreclosure is sought. At present there is no such lien, and the liens claimed could be reinstated only upon proof of tortious conduct. We thus agree with the district court that Count I asserts a claim in tort and not a claim under Section 2410.[9]

■ We are similarly persuaded that the claim asserted in Count IX, which Bor-Son persists in labeling "an equitable claim for reformation of the various documents comprising the Stage I Final Closing Documents", is a tort claim. Bor-Son admits that the claim "is based in part upon alleged misrepresentation" but argues that the claim is also based in part upon a "mistake" by all parties as to the present or future ability of the Developer defendants

to pay the $250,000 represented by the promissory note. The argument is without merit. Even if a claim purports to be grounded in theories other than misrepresentation, the exception set out in 28 U.S.C. § 2680(h) bars the action if deceit or misrepresentation is a factor relied upon to maintain the suit. *Goodman v. United States,* 324 F.Supp. 167, 172 (M.D.Fla.), *affirmed,* 455 F.2d 607 (5th Cir. 1971).

We hold that Counts I, IX, X, XI and XII could only have been brought in conformity with the provisions of the Federal Tort Claims Act and that, because they were not so brought, neither the Hennepin County District Court nor the United States District Court had jurisdiction to entertain them as against the Secretary. When neither court has jurisdiction, dismissal is proper. *Minnesota v. United States,* 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939). As to Counts IX, X, XI and XII, leave to amend was properly denied on the ground that the court would lack jurisdiction.

### III.

■ Counts III, IV, V, VII and VIII stand on a different footing. These counts seek relief on theories of quantum meruit, equitable lien, constructive trust, unjust enrichment and joint venture, respectively. As correctly observed by the district court, they do not sound in tort and are not subject to the exclusivity provisions of the Federal Tort Claims Act. The district court, while apparently of the view that the Hennepin County District Court in which this action was originally brought could properly have exercised jurisdiction over the claims asserted in these counts, nonetheless

---

United States for the district and division in which the action is pending."

**7.** We do not reach the question of whether Section 1444 grants the district courts an independent basis for jurisdiction over claims properly asserted in a state court under Section 2410 and later removed under Section 1444. We note that Judge Webster of this court, then a United States district judge, has authored a persuasive opinion to the effect that it does. *E. C. Robinson Lumber Co. v. Hughes,* 355 F.Supp. 1363 (E.D.Mo.1972).

**8.** The Secretary now urges that the proper authority for removal was 28 U.S.C. § 1442(a)(1).

**9.** Of course, nothing we say in this opinion precludes Bor-Son from pursuing its efforts to have the satisfactions set aside as against defendants other than the Secretary. We express no opinion as to whether, if and when Bor-Son should prove successful in these efforts, it would then have a claim against the Secretary properly cognizable under Section 2410.

concluded *it* lacked jurisdiction to entertain them. In our opinion both courts had jurisdiction, and we accordingly reverse as to these counts.

Under 12 U.S.C. § 1702 the Secretary is in specified circumstances "authorized in his [her] official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." The district court, citing *Federal Housing Administration v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), recognized that this " 'sue and be sued' clause is at least a limited waiver of sovereign immunity." And it observed: "It seems to be undisputed that pursuant to 12 U.S.C. § 1702 the Hennepin County District Court is a court of 'competent jurisdiction' and could properly exercise jurisdiction over all claims against the Secretary other than tort claims."

We agree that Section 1702 operates as a waiver of sovereign immunity as to the claims asserted in Counts III, IV, V, VII and VIII. The pertinent sentence of Section 1702 reads in full:

The Secretary shall, in carrying out the provisions of this subchapter [I] and subchapters II, III, V, VI, VII, VIII, X, IX–A, and IX–B, of this chapter [13], be authorized in his [her] official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.

The question before us is whether this sentence [10] waives sovereign immunity over claims against the Secretary brought by a building contractor in connection with construction work on a housing project insured by the Secretary.

The *Burr* decision, *supra,* was concerned with the predecessor of the current Section 1702, which at the time authorized the Federal Housing Administrator to sue and be sued "in carrying out" specified provisions of the National Housing Act. The Court held that the statute waived sovereign immunity over garnishment proceedings against the Administrator for moneys due an employee.

*Burr* on the one hand makes clear that Section 1702's waiver of sovereign immunity "should be liberally construed." 309 U.S. at 245, 60 S.Ct. 488. The Court states:

This policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity where federal governmental corporations are concerned. *Keifer & Keifer v. Reconstruction Finance Corp.* [306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939)]. Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue and be sued," that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

*Id.* (footnote omitted).

*Burr* also makes clear, however, that the "in carrying out" clause contained in the waiver is not to be disregarded. The Court was careful to point out that among the provisions then contained in the "in carrying out" clause were provisions authorizing

---

**10.** See also 42 U.S.C. § 4527(1), which incorporates the similar "sue and be sued" clause of 12 U.S.C. § 1749a(c)(3). In combination these two provisions authorize the Secretary to sue and be sued "[i]n the performance of, and with respect to, the functions, powers, and duties vested in him [her] by" 42 U.S.C. §§ 4511–4532. We perceive no substantial distinction between this language and the "in carrying out" language of Section 1702.

the Administrator to appoint officers and employees, to fix their compensations, and to make such expenditures (including expenditures for personal services) as were necessary. *Id.* at 248, 60 S.Ct. 488. Only after making these observations did the Court conclude that suits against the Administrator based on employment contracts were permitted, and finally, that garnishment suits were also permitted because "[t]he mere change in the payee does not make the suit unrelated to the duties and liabilities of the Administrator . . . ." *Id.* at 248–49, 60 S.Ct. at 492.

One court, in considering a claim similar to those asserted here, has given controlling effect to the limiting language contained in Section 1702 and in *Burr.* In *Modular Technics Corporation v. South Haven Houses Housing Development Fund,* 403 F.Supp. 204, 206 (E.D.N.Y.1975), a building contractor sought to render the Department of Housing and Urban Development and the Federal Housing Administration liable to it for work performed under a construction contract on a theory that "government representatives were so intimately linked to the contract that an implied contract between the government and plaintiff resulted." The court, reasoning that "no part of the relevant subchapters of Title XII . . in any way authorizes any government official to enter into a construction contract", held that the suit fell outside Section 1702's waiver of sovereign immunity. *Id.* at 206–07. The decision was subsequently affirmed without published opinion by the Second Circuit. 538 F.2d 311 (2d Cir. 1976).

*Modular Technics,* so far as we have detected, stands alone in its interpretation of Section 1702 and *Burr,* and the weight of authority is to the contrary. In *Trans-Bay Engineers & Builders, Inc., v. Hills,* 179 U.S.App.D.C. 184, 190, 551 F.2d 370, 376 (1976), the court had no difficulty whatsoever in concluding that Section 1702 effected a waiver of immunity over a general contractor's claim against the Secretary to recover certain sums of money retained as a "holdback" during the construction of a housing project financed pursuant to Section 236 of the National Housing Act. One court in this circuit has similarly concluded that Section 1702 waives immunity over a general contractor's claim against the Secretary to recover certain undisbursed mortgage loan proceeds as compensation for its work. *Bennett Const. Co. v. Allen Gardens, Inc.,* 433 F.Supp. 825, 831 (W.D.Mo.1977), *appeal dismissed on stipulation of parties,* No. 77–1638 (8th Cir. Nov. 11, 1977). *See also F. W. Eversley Co. v. East N. Y. Non-Profit HDFC,* 409 F.Supp. 791 (S.D.N.Y. 1976) (also allowing suit against the Secretary for amounts allegedly due a general contractor under contracts for construction of housing developments).

Although the question is not entirely free from doubt, we think the cases finding a waiver more nearly comport with the Supreme Court's analysis in *Burr.* It is true that the Secretary is not alleged to be, and probably could not have been, a party to the construction contracts under which Bor-Son performed. Nevertheless, the cited cases forcefully demonstrate that the Secretary's role in carrying out her statutory duties commonly extends well beyond execution and performance of the mortgage insurance contract. Moreover, a perusal of the relevant subchapters of Title 12 and the specified sections of Title 42 [11] persuades us that such an expansive role is consistent with the mandate received by the Secretary from the Congress, which certainly intended that the Secretary take action having significant consequences for building contractors. Here, the project agreement executed in 1971 between the Secretary and Cedar-Riverside Land Company recited: "[T]he Secretary's interest in the development of the Project as a new community is not limited to his financial interests as guarantor . . of the Developer's obligations, but extends to the accomplishment of the *Purposes of the* [Urban Growth and New Community Development] *Act* [of 1970, 42 U.S.C. §§ 4501 *et seq.*]" (emphasis in original). Our opinion in *Cedar-Riverside Environmental Defense Fund v. Hills, supra,* re-

---

**11.** See note 10, *supra.*

veals some of the Secretary's subsequent involvement in the project. Under the circumstances we conclude that creation of a wall of separation between the Secretary and the builder would be inconsistent with the Secretary's statutory mandate and therefore with *Burr*. In the language of *Burr*, the Secretary has been "launched . . . into the commercial world" and, if her actions or the actions of those under her were such as would entail liability to Bor-Son on general legal and equitable principles, she "is not less amenable to judicial process than a private enterprise under like circumstances would be." 309 U.S. at 245, 60 S.Ct. at 490.

We accordingly hold that the Secretary is not immune from the claims asserted in Counts III, IV, V, VII and VIII and that those claims could have been asserted in any court of competent jurisdiction. There is no question but that the Hennepin County District Court is a court of competent jurisdiction with respect to such claims.

The district court, as already noted, did not dispute that the claims asserted in Counts III, IV, V, VII and VIII were cognizable in the Hennepin County District Court. It nevertheless found an absence of federal jurisdiction. First, it noted that Section 1702 is not a grant of original subject matter jurisdiction to the federal district courts. This conclusion was required under our decision in *Reconstruction Finance Corporation v. MacArthur Mining Company*, 184 F.2d 913 (8th Cir. 1950), *cert. denied*, 340 U.S. 943, 71 S.Ct. 505, 95 L.Ed. 681 (1951). Second, it rejected contentions by Bor-Son that original jurisdiction was conferred by either 28 U.S.C. § 1331 or 28 U.S.C. § 1337. We have no occasion to disturb these rulings.

Finally, the court declined to consider whether removal jurisdiction was conferred by 28 U.S.C. § 1442(a)(1).[12] Although recognizing that that section might well provide jurisdiction over claims not otherwise cognizable in federal court, the court declined to consider the issue because Bor-Son "explicitly disclaim[ed] any reliance on" Section 1442(a)(1).

■ We do not think that Section 1442(a)(1) contemplates a procedure whereby the Secretary can remove a case from a state court of *competent* jurisdiction and subsequently obtain *dismissal* on the basis that the federal court to which removal is effected is not a court of competent jurisdiction. The Supreme Court has held:

[T]he right of removal under § 1442(a)(1) is made absolute whenever a suit in a state court is for any act "under color" of federal office, regardless of whether the suit could originally have been brought in a federal court. Federal jurisdiction rests on a "federal interest in the matter," *Poss v. Lieberman*, 299 F.2d 358, 359 (C.A. 2d Cir.), *cert. denied*, 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962), the very basic interest in the enforcement of federal law through federal officials.

*Willingham v. Morgan*, 395 U.S. 402, 406, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969). *See also Bennett Const. Co. v. Allen Gardens, Inc., supra* at 832; 1A J. Moore *Federal Practice* ¶¶ 0.164[1] at 302–06 & 0.164[2] at 323 (2d ed. 1974). Nor are we satisfied that the district court could ignore this settled principle merely because Bor-Son failed to rely on Section 1442(a)(1).[13] Counts III, IV, V, VII and VIII were properly cognizable in state court and properly removed under Section 1442(a)(1). That section according-

---

**12.** This section provides that a civil action commenced in a state court against "[a]ny officer of the United States or any agency thereof, or person acting under him [her], for any act under color of such office" may be removed by such officer, agency or person to the appropriate federal district court.

**13.** When a defendant removes an action to federal court, such defendant has the burden of showing that the federal court has jurisdiction. *See McNutt v. General Motors Acceptance*

*Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969); 28 U.S.C. § 1446(a). If no such showing is made, and if the state court from which removal was had did have jurisdiction, the proper course is remand, not dismissal. 28 U.S.C. § 1447(c); *Crenshaw v. Great Central Ins. Co.*, 482 F.2d 1255, 1259 (8th Cir. 1973); 1A J. Moore *Federal Practice* ¶ 0.169[1] at 554 (2d ed. 1974).

ly conferred federal jurisdiction over them.[14]

## IV.

We emphasize that the conclusion we have reached with respect to Bor-Son's non-tort claims goes no further than resolving the jurisdictional issues presented. This opinion should not be read as expressing a view on whether Bor-Son's claims are on the merits of sufficient substance to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., or a motion for summary judgment under Rule 56, Fed.R.Civ.P., nor should it be read as expressing a view on the correctness or incorrectness of any of the cited cases' dispositions on the merits.

The order of the district court dismissing Bor-Son's original complaint as against the Secretary is affirmed as to Counts I, II and VI and reversed as to Counts III, IV, and V. The order denying leave to amend is affirmed as to Counts IX, X, XI and XII and reversed as to Counts VII and VIII. The cause is remanded to the district court for further proceedings not inconsistent with this opinion.[15]

Affirmed in part, reversed in part, and remanded.

ROSS, Circuit Judge, concurring.

My reading of the Supreme Court's opinion in *Federal Housing Administration v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), may be considerably narrower than that of the majority. In my opinion, *Burr* authorizes suits under 12 U.S.C. § 1702 only when the claim clearly arises from acts performed by the Secretary in carrying out the provisions of the National Housing Act. When the alleged acts of the Secretary are so authorized, *Burr* allows the Secretary to "be sued" by any manner of judicial process available against a private enterprise under like circumstances. *Id.,* 309 U.S. at 245, 60 S.Ct. 488. However, the Supreme Court cautioned that

[t]o allow respondent to reach the claim through a writ of garnishment is therefore not to enlarge [the Secretary's] liability nor to add one iota to the scope of § 1. For the end result is simply to allow suit for the collection of a claim on which Congress expressly made [the Secretary] suable.

*Id.,* 309 U.S. at 248–49, 60 S.Ct. at 492.

While I am constrained to agree that, under the pleadings in this case, the alleged acts of the Secretary may have been within her authority under the National Housing Act, I would make it clear that not every act of the Secretary will give rise to liability simply because it was performed in her capacity as such. Those claims against the Secretary alleging acts which may be unrelated to the purposes of the National Hous-

---

**14.** This conclusion is not foreclosed by the Tucker Act. See 28 U.S.C. §§ 1346(a) and 1491. Unlike the Federal Tort Claims Act, which in terms vests exclusive jurisdiction in the district courts over claims against the Government sounding in tort, Section 1491 merely grants jurisdiction to the Court of Claims over the types of claims therein specified. One district court accurately explains:

Most claimants against the government rely on the Tucker Act for the waiver of sovereign immunity that would otherwise preclude their suits. When such a claimant attempts to sue in a district court for a sum that exceeds § 1331's $10,000 jurisdictional minimum, he encounters the Tucker Act's $10,-000 maximum, and his claim therefore fails as an unconsented suit against the sovereign. Hence it is commonly said that suits against the government for more than $10,000 are in the exclusive jurisdiction of the Court of Claims. In fact, the jurisdiction of the Court of Claims for suits claiming more than $10,-000 is not exclusive; rather, there is rarely any statute available that waives sovereign immunity for suits in the district court, other than the Tucker Act with its $10,000 limit. *Ghent v. Lynn,* 392 F.Supp. 879, 881 (D.Conn. 1975) (citations omitted). *See also Trans-Bay Engineers & Builders, Inc., v. Hills, supra* at 376; *Bennett Constr. Co. v. Allen Gardens, Inc., supra* at 831.

**15.** The district court's order remanding the cause as to defendants other than the Secretary was not included in the certification under 28 U.S.C. § 1292(b) and is in any event unreviewable. The district court, having stayed execution of its judgment pending disposition of this appeal, of course retains the discretion to vacate such order pending the outcome of such further preliminary proceedings between Bor-Son and the Secretary as may occur.

ing Act are not within the waiver of immunity contained in § 1702. *See, e. g., City of Sacramento v. Secretary of HUD,* 363 F.Supp. 736 (E.D.Cal.1972).

While I agree that the majority has reached the correct legal decision, as a practical matter I note that plaintiff was paid 99% of its contract price; that it accepted a $250,000 note (the other 1%) at closing in order that the balance of the loan proceeds could be made available by the banks, to be paid, at least in part, to the plaintiff; and that it is difficult to understand, even assuming the allegations of the complaint are true, how the United States has either profited by the transaction or has harmed the plaintiff.