Cora GRIFFIN et al.

v.

Patricia Roberts HARRIS et al.

Civ. A. No. 76–278.

United States District Court,
E. D. Pennsylvania,
Civil Division.

Sept. 27, 1979.

---

Harold R. Berk, Community Legal Services, Philadelphia, Pa., Kathleen Spann, Luzerne County Legal Services, Wilkes-Barre, Pa., for plaintiffs.

Peter F. Vaira, U. S. Atty., Robert S. Forster, Asst. U. S. Atty., Philadelphia, Pa., Carolyn B. Lieberman, U. S. Dept. of H. U. D., Washington, D. C., for defendants.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

In January 1976, tenants of certain multi-family housing developments brought a class action on behalf of all low-income tenants in the nation who, at the time of commencement of this action, were receiving rent supplement payments pursuant to contracts between their landlords and the Department of Housing and Urban Development (HUD) in amounts less than those required by HUD's own regulations. In its decision of February 13, 1978, the United States Court of Appeals for the Third Circuit determined that money had been illegally withheld from plaintiffs by HUD, and remanded to this court the issue of plaintiffs' entitlement to retrospective monetary relief for the withheld benefits. 571 F.2d 767 (3rd Cir. 1978). By order dated July 27, 1978, this court entered partial summary judgment for the plaintiffs, granting them declaratory and injunctive relief and enjoining HUD from paying less than the regulatorily defined maximum supplement to eligible tenants in the future. The nationwide class of plaintiffs was decertified in a May 9, 1979 Order, D.C., 83 F.R.D. 72, and four tenants who have received rent supplements since 1971, 1972 and 1973, respectively, remain as named plaintiffs. Plaintiffs have filed a motion for summary judgment in the form of an order requiring HUD to pay them restitution back to December 22,

1971, the date on which the regulations governing the rent supplement program (24 C.F.R. §§ 215.25 and 215.45) were issued. They seek restitution through a forward adjustment of their rental payments until such time as they have received the full amount of their restitution entitlement.[1] HUD has filed a cross-motion for summary judgment in opposition to plaintiffs' motion, claiming that sovereign immunity has not been waived and that the equities do not lie in plaintiffs' favor.

In its present posture, this case presents two primary questions: 1) whether the restitution of withheld benefits here sought by plaintiffs requires an explicit waiver of sovereign immunity; and 2) if so, whether sovereign immunity has been waived.

The Government has taken the view that plaintiffs have already received the only relief to which they are entitled—injunctive relief—and that they are not entitled to restitution since it would necessitate an appropriation of funds from the United States Treasury. HUD contends that not every substantive right creates a remedy, and that its budget authority to contract for the payment of rent supplements does not constitute funds or money available for payment of a judgment such as that contemplated here. Although it is well-settled that there must be an explicit waiver of sovereign immunity before a damage award can be recovered against the United States, the cases have made a distinction between money damage awards to persons having a right to receive money from the United States and the restoration of money improperly taken or improperly withheld. *Davis v. Romney,* 490 F.2d 1360, 1371 (3d Cir. 1974).

■ Restitution has generally been allowed without an express waiver of sovereign immunity where the remedy is essentially equitable in nature and can be considered an integral part of the injunctive or declaratory relief sought. In *Carter v.*

*Butz,* 479 F.2d 1084 (3d Cir. 1973), *cert. denied,* 414 U.S. 1103, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973), it was found that the recipients' statutory entitlement to food stamp benefits imposed an obligation upon the Department of Agriculture to provide them with restitution for illegally withheld benefits, notwithstanding the fact that the effect of the remedy was to grant full relief at the expense of the federal government. Similarly, in *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3d Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), the court found that plaintiffs were entitled to equitable restitution in an employment discrimination claim for back wages. It has also been held that restitution is an appropriate remedy in a suit by union members to enjoin their union from violating the Labor-Management Reporting and Disclosure Act's balloting procedure for a dues increase and to recover excessive dues paid in violation of the Act, *Connor v. Highway Truck Drivers & Helpers,* 68 F.R.D. 370 (E.D.Pa.1975), and in a suit in which patients whose Social Security checks were routinely appropriated to pay claims by the Commonwealth in violation of the plaintiffs' rights. *Vecchione v. Wohlgemuth,* 80 F.R.D. 32 (E.D.Pa.1978).

Since it has been determined that the plaintiffs here are entitled to have full rent supplements paid on their behalf up to 70% of rent when necessary to reduce their share of the rent to an amount equal to 25% of their adjusted gross income, which were withheld by HUD contrary to their own published regulations, and since the public must be deemed to have a strong interest in the proper operation of the rent supplement program, this court will order that plaintiffs recover the value of benefits wrongfully withheld.

■ The defendant argues that the relief sought by plaintiffs is barred as a result of the Supreme Court's decision in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39

---

1. The parties have agreed that the difference between actual HUD rent supplement payments and the 70% rent level for the respective plaintiffs are as follows:

| | |
|---|---|
| Cora Griffin | $ 528.80 |
| Bessie Williams | $ 727.40 |
| Martha Hughes | $ 794.18 |
| Marietta Harkins | $1,459.48 |

L.Ed.2d 662 (1974). *Edelman* involved federal-state programs of Aid to the Aged, Blind and Disabled, in which Illinois public aid officials administered benefits pursuant to their own regulations and under time requirements which were less favorable to the recipients than the federal regulations set forth in 45 C.F.R. § 206.10(a)(3). The district court granted plaintiff recipients injunctive relief requiring the Illinois officials to comply with the federal time limits wrongfully withheld to all eligible applicants who had made applications between the date the regulations were issued and the date of the preliminary injunction. The Court of Appeals affirmed. The United States Supreme Court reversed holding that 1) a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief and may not include a retroactive award which requires the payment of funds from the state treasury; and 2) Illinois by participating in the federal program, had not waived its immunity under the Eleventh Amendment from suit in a federal court. Relying on *Edelman*, the government in the case *sub judice* argues that the court cannot wrap an award of restitution within the cloak of its equitable power in order to avoid the bar of sovereign immunity. In my view, defendants have misread the holding of *Edelman*. I believe that as stated by the court in *Rhodes v. Weinberger*, 66 F.R.D. 601 (E.D.Pa.1975), *Edelman* does not hold "that an award of past benefits is not within a court's equity powers, but merely that these more flexible equity powers do not guarantee that all Eleventh Amendment problems will be eliminated". 66 F.R.D. at 604 n. 3. In addition, as plaintiffs have pointed out, *Edelman* did not involve the sovereign immunity of the federal government, but rather dealt with the effect of the Eleventh Amendment on actions against states. I am persuaded, therefore, that the plaintiffs' claims for restitution in the suit at bar should be considered as part and parcel of the injunctive relief already granted rather than as claims for money damages against the United States, and are not barred by the Supreme Court's holding in *Edelman*.

In any event, a waiver of sovereign immunity is provided by 12 U.S.C. § 1702.

As stated by HUD in its memorandum in support of its cross-motion for summary judgment, it is well-settled that a waiver of sovereign immunity where required must be specific and explicit, *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), and cannot be implied from an ambiguous statute or derived from the equitable powers of the court. *Edelman v. Jordan, supra*. However, it has been held that 12 U.S.C. § 1702 constitutes an express waiver of immunity with regard to cases such as the instant one arising under national housing legislation. *Bennett Construction Co. v. Allen Gardens, Inc.*, 433 F.Supp. 825 (W.D.Mo.1977); *Abrams v. Hills*, 547 F.2d 1062 (9th Cir. 1976); *Trans-Bay Engineers & Builders, Inc. v. Hills*, 179 U.S.App.D.C. 184, 551 F.2d 370 (D.C.Cir. 1976); *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill.1974), *rehearing denied*, 7 Cir., 392 F.Supp. 559. Plaintiffs' claims are, therefore, not barred by sovereign immunity.

Section 1702 provides in pertinent part as follows:

> "[t]he Secretary [of HUD] shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX–A, IX–B, and X of this chapter, be authorized in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal."

12 U.S.C. § 1702 (1976). In *Bennett*, the plaintiff's claim arose under § 236 of the National Housing Act (12 U.S.C. § 1715z–1), which provision is part of Subchapter II of Chapter 13 of the United States Code—one of the subchapters specifically enumerated in the waiver contained in § 1702. Similarly, *Abrams* and *Trans-Bay Engineers & Builders* involved actions arising under 12 U.S.C. § 1715z–1. *Brown* involved an action brought by mortgagors under the mortgage assistance and mortgage insurance programs of the National Housing Act alleging violation of statutory obligations on the part of the government defendant.

The court in *Brown* stated that a plain reading of the National Housing Act demonstrates that the government through HUD has "statutorily consented to be sued in cases arising under this law." 385 F.Supp. at 991. However, the mortgage assistance and mortgage insurance provisions of the Act at issue in *Brown* also fall within the subchapters enumerated in the waiver contained in 12 U.S.C. § 1702.

There are other cases which have held, however, that § 1702 provides a waiver in actions arising under provisions of the National Housing Act which do not fall within the enumerated subchapters. In *Pennsylvania v. Lynn*, 501 F.2d 848 (D.C.Cir. 1974), it was held that the Secretary of HUD could not assert the defense of sovereign immunity in an action to compel the Secretary to reinstate certain low income housing programs under 12 U.S.C. §§ 1701s, 1701x, 1715z and 1715z–1. Sections 1701s and 1701x, relating to rent supplement payments and assistance to nonprofit sponsors of low and moderate income housing, respectively, do not fall within the enumerated subchapters. In *Lynn*, the District of Columbia Circuit considered the nature of the rent supplement program under which the federal government agrees to make monthly rental payments on behalf of qualified tenants in housing erected under other government programs. The court emphasized that the 1701s rent supplement program is "not an independent housing construction program but an incentive that is piggybacked onto projects under other programs," 501 F.2d at 850, and that its "continued vitality . . . is, therefore, dependent in the first instance upon the continued operation of the underlying construction programs onto which it is piggybacked". *Id.* at 867. Since the programs onto which the rent supplement program is generally "piggybacked" fall within the enumerated subchapters to which the § 1702 waiver applies, the District of Columbia Circuit concluded that the waiver should also be construed to apply to actions arising under the § 1701s rent supplement provision itself. Likewise, in *Estrada v. Hills*, 401 F.Supp. 429 (N.D.Ill.1975), it was found that the Secretary of HUD was amenable to suit by plaintiffs for alleged violation of HUD regulations regarding the maintenance of a vacant HUD-owned building—regulations promulgated pursuant to 12 U.S.C. §§ 1701 and 1715b. Although § 1701 is not within one of the enumerated subdivisions, it was held that § 1702 was an effective waiver authorizing actions against the Secretary of HUD in his official capacity where carrying out the provisions of National Housing Act and also authorized actions for money damages against government officials.

In *Sacramento v. Secretary of HUD*, 363 F.Supp. 736 (E.D.Cal.1972), the scope of the waiver contained in § 1702 was directly confronted. Taking the approach espoused by the Supreme Court in *F. H. A. v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), the court held that § 1702 should be liberally construed, and that the waiver should be denied only in suits which are clearly "not consistent with the statutory or constitutional scheme". 363 F.Supp. at 738, *quoting F. H. A. v. Burr*, 309 U.S. at 245, 60 S.Ct. 488. In *Burr*, the issue was whether garnishment of the Federal Housing Administration ("F.H.A.") for monies due an employee falls within the scope of the provision authorizing the Federal Housing Administrator (now the Secretary) to sue and be sued in carrying out the provisions of the Act. The court held that garnishment of the F.H.A. for monies due to an employee is within the consent to be sued contained in the National Housing Act. In its opinion, the Court noted the current disfavor of the doctrine of governmental immunity from suit and stated as a premise that waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed. Justice Douglas, writing for the Court, stated:

> [W]hen Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority

to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue [and] be sued", that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

309 U.S. at 245, 60 S.Ct. at 490. Following the *Burr* Court's reasoning, the district court in *Sacramento* concluded that the statement in § 1702 confining the waiver of immunity to the Secretary's actions in carrying out the provisions of the enumerated subchapters indicates the intent of Congress "to confine the Secretary's authority to sue and be sued to actions *related* to his official functions." 363 F.Supp. at 738. (emphasis supplied by the court). The court wrote: "The purpose of the National Housing Act is to promote the construction and purchase of residential housing by creating an extensive system of insuring home mortgages. Each of the ten subchapters under which the Secretary may sue or be sued promotes this basic scheme." *Id.*

In *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174 (8th Cir. 1978), the United States Court of Appeals for the Eighth Circuit again held that the § 1702 waiver should be liberally construed. The Court of Appeals there noted that the case of *Modular Technics Corp. v. South Haven Houses Housing Development Fund*, 403 F.Supp. 204 (E.D.N.Y. 1975), in which the § 1702 waiver was strictly construed, stands alone against the weight of authority. In *Bor-Son*, the contractor on a federally insured housing projects brought suit against the Secretary of HUD for monies due on the construction contract after the owners of the projects had defaulted. Relying on the Supreme Court's analysis in *Burr*, the Eighth Circuit concluded that, although the Secretary was not a party to the construction contracts under which Bor-Son performed, the Secretary's role in carrying out her statutory duties commonly extends well beyond the execution and performance of the mortgage insurance contract. The court stated:

Under the circumstances we conclude that creation of a wall of separation between the Secretary and the builder would be inconsistent with the Secretary's statutory mandate and therefore with *Burr*. In the language of *Burr*, the Secretary has been "launched . . . into the commercial world" and, if her actions or the actions of those under her were such as would entail liability to Bor-Son on general legal and equitable principles, she "is not less amenable to judicial process than a private enterprise under like circumstances would be."

572 F.2d at 181 *quoting F. H. A. v. Burr*, 309 U.S. at 245, 60 S.Ct. 488. The *Bor-Son* court accordingly concluded that the Secretary was not immune from the claims asserted by plaintiff. *See also City of Philadelphia v. Page*, 363 F.Supp. 148 (E.D.Pa. 1973).

Although the rent supplement program as set forth in 12 U.S.C. § 1701s was enacted as part of the Housing and Urban Development Act of 1965 rather than as part of the National Housing Act itself, the provisions contained therein are clearly not inconsistent with the statutory scheme of the National Housing Act. As noted by the Court in *Pennsylvania v. Lynn, supra*, the program itself is actually an incentive that is superimposed upon other federal housing and mortgage insurance programs.

Construing the waiver to apply to suits arising under the rent supplement program is, therefore, consistent with the Supreme Court's statement in *Burr* that Congress intended the waiver language of § 1702 to confine the Secretary's authority to sue and be sued to actions related to the Secretary's official functions. In light of the nature of the rent supplement program, administra-

tion of its provisions must clearly be deemed a part of the Secretary's official functions. For these reasons, I conclude that the claims asserted by plaintiffs are not barred by sovereign immunity.

■ In response to plaintiffs' motion, defendant has also contended that this court has no jurisdiction over plaintiffs' claims. Plaintiffs have asserted jurisdiction under 28 U.S.C. §§ 1337 and 1361 (and, in their reply memorandum to HUD's cross-motion for summary judgment, under § 1331). It has been held that national housing legislation regulates commerce within the meaning of § 1337 and that the district courts have jurisdiction over actions arising thereunder. *Davis v. Romney*, 490 F.2d 1360 (3d Cir. 1974). *Accord, Dubose v. Hills*, 405 F.Supp. 1277 (D.C.Conn.1975), *motion denied to vacate*, 2 Cir., 420 F.Supp. 399; *Metropolitan Area Housing Alliance v. United States Department of Housing & Urban Development*, 69 F.R.D. 633 (N.D.Ill. 1976). In *Davis*, plaintiffs sought declaratory and injunctive relief and money damages against the United States alleging a violation of the requirement that insured mortgages be secured by property which meets requirements of local ordinances. Although plaintiffs' claim for money damages was dismissed for failure to state a claim, the Court of Appeals held that the district court properly had jurisdiction over this case under § 1337. The court stated: "The commerce power clearly is a significant source of federal power for the National Housing Act, which was largely designed to stimulate the building trades and increase employment, and to control various aspects of interstate commerce connected with mortgage financing." 490 F.2d at 1365–66 (citations omitted). For the reasons discussed above, the same rationale applies equally to the rent supplement program as an integral part of national housing legislation.

■ Finally, the government has argued that restitution should be denied plaintiffs as inequitable since plaintiffs have so long delayed in bringing their claims and since it would divert scarce housing assistance funds from those with current needs. As pointed out by plaintiffs, however, HUD was in a better position to know of the inconsistency between their published regulations and internal handbooks. HUD has admitted it believes $200,000,000 of budget authority for the rent supplement program for the fiscal year 1980 should be rescinded since it is not needed. It thus appears that, in light of the nature of the relief sought by plaintiffs (forward adjustment of their rent supplement payments) and the excess contract authority available to HUD, it would be inequitable to *deny* restitution to plaintiffs in the instant case.

Accordingly, an Order will be entered granting restitution to plaintiffs through a forward adjustment of their rent supplement payments until they have received credit for the full amount of rent supplement wrongfully withheld.