STATE OF MISSOURI, ex rel. William L. WEBSTER, Attorney General, Plaintiff,

v.

MISSOURI TRAILS RESORT CORPORATION, a/k/a Missouri Trails Resort Club,

and

Howard W. Fisher, Individually and as President of Missouri Trails Resort Corporation, a/k/a Missouri Trails Resort Club,

and

Rick Ravine, Liquidating Agent for the National Credit Union Administration, sued in his official capacity,

and

Lee G. Kline, Trustee for the Credit Union Administration, sued in his official capacity, Defendants.

85–0798C(3).

United States District Court, E.D. Missouri, E.D.

April 26, 1985.

Supplemental Order and Supplemental Memorandum July 11, 1985.

David Van Lieshout, Peter Lumaghi, Asst. Attys. Gen., St. Louis, Mo., for plaintiff.

Steven M. Hamburg, David H. Rubin, Summers, Compton, Wells & Hamburg, John P. Carnasiotis, Gary H. Feder, Lee G. Kline and Gary Heggs, Shifrin, Treiman, Barken, Dempsey, Ulrich & Davis, St. Louis, Mo., for defendants.

## MEMORANDUM

HUNGATE, District Judge.

This matter is before the Court on plaintiff's motion for preliminary injunction, seeking as preliminary relief an injunction similar to the temporary restraining order now in effect.

Plaintiff, State of Missouri, ex rel. William L. Webster, filed this action on April 8, 1985, in the Circuit Court of Franklin County, Missouri, to enjoin alleged violations of the Missouri Merchandising Practices Act, Mo.Rev.Stat. ch. 407, as well as

to obtain other forms of equitable relief. The case was removed by defendant, National Credit Union Administration Board, on the s'me date, and the State filed an amended complaint on April 9, 1985. A hearing on the State's preliminary injunction request was held on April 16 and 17, 1985, with argument heard on April 24, 1985.

## Findings of Fact

1. Relator William L. Webster is the duly-elected and acting Attorney General for plaintiff, the sovereign State of Missouri (the State).

2. Defendant, Missouri Trails Resort Corporation (Missouri Trails), was incorporated as a Missouri corporation on December 27, 1982, and is a corporation in good standing with the Secretary of State, State of Missouri, as of the filing of the petition. Among its corporate purposes as set out in its articles of incorporation are operation of a camp resort and recreational facility, provision of the services and facilities ordinarily connected with such a facility, the selling of memberships and ownerships in said recreational facility, financing of the purchase of said memberships or ownerships, and conducting all financial transactions connected with or related to such operations.

3. Defendant, Howard W. Fisher (Fisher), an individual residing in St. Charles County, State of Missouri, is an incorporator of defendant Missouri Trails Resort Corporation and is listed on the corporation's June 20, 1984, annual registration report as president. The report lists as treasurer Glen S. Fisher, who was also an incorporator of Missouri Trails.

4. The National Credit Union Administration (NCUA) is an agency of the United States government, and defendant National Credit Union Administration Board (NCUAB) manages said agency pursuant to 12 U.S.C. § 1752a.

5. Defendant, Rick Ravine, is an individual and holds the position of the Liquidating Agent appointed by NCUAB to liquidate the assets of Zionic Federal Credit Union (Zionic), which credit union was placed in involuntary liquidation on June 6, 1984.

6. Defendant, Lee G. Kline, is an individual and the Successor Trustee to a deed of trust filed in the Franklin County Recorder of Deeds' Office in Book 249, Page 110, concerning 28.87 acres in Missouri Trails' recreational facility at Villa Ridge, Missouri.

7. Missouri Trails has carried on the business of advertising, offering for sale, and selling memberships to the public in and from the State of Missouri since January 1, 1983, to October 31, 1984, for the recreational use of facilities located at property called Missouri Trails Resort in Villa Ridge, Missouri, County of Franklin.

8. From April of 1983 through November of 1984, Missouri Trails employed sales personnel to give sales presentations to prospective membership purchasers at Missouri Trails Resort, Villa Ridge, concerning the terms of membership, as well as a description and tour of the facility.

9. The sales personnel were under the supervision and instruction of an individual named Roger Smith. Smith received and carried out instructions from Fisher in 1983 to have the Missouri Trails sales personnel tell prospective membership purchasers that construction of a lodge would begin on the sale of the five hundredth membership.

10. The five hundredth membership in Missouri Trails Resort was sold in November of 1983, and the five hundredth membership net of cancellations was sold in April of 1984.

11. In mid-April of 1984, Missouri Trails initiated application procedures involving sketch plan review of the lodge and facilities by the Franklin County Planning & Zoning Commission (Commission). After the plans were reviewed, County Planning & Zoning Director Richard Oldenburg sent Missouri Trails a letter regarding various aspects of applicable regulations.

12. The April, 1984, letter by Oldenburg did not grant Missouri Trails the right to

start construction on the lodge or other facilities; rather, initiation of construction required approval of a preliminary plan and plat by the Commission, along with establishment of an escrow account.

13. In August of 1984, Missouri Trails submitted its preliminary plat. Missouri Trails made a presentation on its plans to the Commission in September of 1984. After the meeting, on September 20, 1984, the Commission sent Missouri Trails a letter granting conditional approval to the plans and listing seven requirements before final approval could be given.

14. Missouri Trails was not free to begin construction of a lodge upon receipt of the letter, but various improvements could have been commenced upon establishment of the escrow account.

15. Oldenburg testified that it should probably have taken about thirty days to fulfill the Commission's seven preconditions, but Missouri Trails has never submitted a final plan or established an escrow account.

16. Harold Wibbenmeyer, an employee of the architectural firm which had contracted to provide drawings of the lodge, worked on said drawings during the summer of 1984. In September of 1984, his employer told him to stop working on those drawings.

17. Glen Fisher, Missouri Trails' developmental director, testified that the architects were directed to stop working on the lodge because zoning had not been completed and it was futile to spend money on architects and engineers when work could not be started. He acknowledged that Missouri Trails owed money to the architects, but denied that this was the reason that such work was stopped.

18. Defendant Howard W. Fisher told a meeting of members of Missouri Trails Resort, shortly after the letter listing seven preconditions was issued by the Commission to Missouri Trails on September 20, 1984, that plans for construction on the lodge were being delayed by Franklin County's failure to issue a permit. He indicated that money had been put aside for the building, and that construction would begin as soon as the County officers "got off their tails" and issued a permit. Another meeting occurred a month later with Missouri Trails' representative Dan Kibler, who was vague and uninformative.

19. Throughout the summer of 1984, various Missouri Trails employees were directed to clear area for the lodge and move some dirt around. At least one employee had the impression that the work had been directed for the purpose of forestalling complaints by members. Resort manager Bart Drake testified that Howard Fisher had told him to tell members that summer that the lodge was being redesigned to be larger, and that construction was also being held up by a zoning problem.

20. Throughout the sales of memberships, prospective members were told that various amenities such as tennis courts and riding stables would be constructed, as well as the aforementioned lodge, with an indoor pool. None of these specific amenities ever came into being, nor were adequate roads created. There was also testimony which called into question the adequacy of sewage disposal at the resort.

21. The membership purchase contracts provided by Missouri Trails stated that members were entitled to use Missouri Trails' recreational facilities, but that "Buyer's membership and rights under this Agreement have no application to, *and do not constitute an interest in any specific real estate owned by Seller ...*" (emphasis added).

22. Various Missouri Trails employees were offered "free" memberships at the resort. However, to obtain the memberships, the employees signed blank promissory notes which were used to obtain loans for Missouri Trails in the employees' names. Payments on the loans were made by Missouri Trails; however, some of the loans are now in default.

23. From the inception of Missouri Trails and until the liquidation of Zionic on June 6, 1984, purchasers of memberships in Missouri Trails Resort were offered a loan

of the purchase monies from Zionic on completion of a promissory note and an application for credit.

24. In the summer of 1982, Bart Drake was employed by a corporation headed by Howard Fisher to assist in building a house at a resort. Drake subsequently worked as a printer for National Inheritance Corporation and worked in the main office of the corporation.

25. In his role as printer in the fall and winter of 1982, Mr. Drake printed up bonds at the request of Glenn or Howard Fisher. On one occasion, during an audit by members of the NCUA, Howard Fisher told Drake to print up bonds, and when finished to destroy the negatives, plates, and all other evidence of the bonds. Drake saw these bonds signed by Howard Fisher and backdated forty-five days from the date of preparation.

26. Zionic was a credit union organized under the Federal Credit Union Act, 12 U.S.C. § 1751, et seq., by the approval granted by Lawrence Connell, Jr., Administrator, National Credit Union Administration, on February 15, 1979, pursuant to an Organization Certificate, Charter No. 23318, subscribed to by defendant Howard Fisher, among others, on June 3, 1978.

27. By the terms of the Organization Certificate described in the preceding paragraph, the field of membership in Zionic was limited to members of the Reorganized Church of Jesus Christ of Latter Day Saints who were church participants within the geographic boundaries as of the date of the credit union's charter, the East Central States Region, unremarried spouses of persons who died while within the field of membership of Zionic, employees of Zionic, members of their immediate families, and organizations of such persons.

28. In conducting an annual supervisory examination of Zionic by NCUA examiners in March of 1983, it was disclosed that the credit union had invested $6.99 million in bonds of sponsor-related corporations, which investments were not authorized under the Federal Credit Union Act. Thus, the bond investments were deemed "illegal" by the NCUA, without regard to their legal enforceability.

29. Upon the NCUA's discovery of the bonds, Zionic and NCUA entered into an agreement wherein Zionic would dispose of the bonds within a reasonable period of time.

30. During a follow-up examination in June of 1983, NCUA learned that Zionic had replaced $1,975,000 of the illegal bonds with large loans to individuals who "generally" did not have the ability to pay the loans. Again, agreements were made to take appropriate corrective action.

31. On September 1, 1983, Zionic acquired a deed of trust granted by Missouri Trails on 28.87 acres located in the development part of Missouri Trails Resort.

32. During supervisory visits in October and November of 1983, the NCUA learned that Zionic had granted loans to purchasers of memberships in Missouri Trails, who were not eligible for membership in Zionic, in violation of its charter.

33. In November of 1983, the NCUAB began the liquidation process of Zionic by the issuance of a Notice of Immediate Suspension of Charter and Intent to Place Into Involuntary Liquidation. On June 6, 1984, Zionic was found to be insolvent and placed into involuntary liquidation by the NCUAB pursuant to 12 U.S.C. §§ 1766(b) and 1787(a)(1). The NCUAB, pursuant to 12 U.S.C. § 1787(a)(1), appointed itself as liquidating agent for Zionic.

34. In liquidating Zionic's assets, NCUAB has continued to accept monies from members of Missouri Trails who were granted a loan from Zionic.

35. In liquidating Zionic's assets, NCUAB directed its agent, Lee G. Kline, to sell 28.87 acres located in the development part of Missouri Trails Resort, which acreage is subject to the deed of trust granted by Missouri Trails to Zionic on September 1, 1983; and notice of a foreclosure sale on April 12, 1985, was published.

36. The deed of trust on the 28.87 acres that are subject to the foreclosure sale by

the NCUAB may have been executed as part of an effort to retire the illegal bonds held by Zionic, pursuant to Zionic's agreement with NCUA.

37. The promissory notes securing the deed of trust are in default. The promissory notes have been accelerated and are due in full.

38. Pursuant to the placement of Zionic into involuntary liquidation, the NCUAB, in its capacity as insurer, paid the insured depositors in Zionic approximately $7 million from the National Credit Union Share Insurance Fund (Share Insurance Fund).

39. The NCUAB, as liquidating agent for Zionic, is collecting the assets of the failed credit union and is seeking to reduce those assets to cash. The funds from the liquidation will ultimately be distributed in accordance with federal law to the creditors, if any, of Zionic, the Share Insurance Fund, and the credit union's uninsured depositors. The ratio of distributions to the Share Insurance Fund and the uninsured depositors is fifty-two percent to forty-eight percent. Two of the large uninsured depositors are the Bureau of Indian Affairs and the United States Air Force Retirement Fund.

*Conclusions of Law*

1. Pursuant to 12 U.S.C. § 1789, any civil suit to which NCUAB is a party is deemed to arise under the laws of the United States. Accordingly, the Court has jurisdiction to this action pursuant to its removal.

2. In closing arguments for the first time, defendants Missouri Trails and Fisher asserted that the State failed to prove notice as required under the Act, and that the requirement of notice is jurisdictional.

Proper notice was pled in the State's complaint, and was not questioned by defendants either before or during the hearing on the State's request for preliminary injunctive relief. Accordingly, defendants, by their appearances, have waived this objection. *See State ex rel. Danforth v. In-*

*dependence Dodge, Inc.,* 494 S.W.2d 362, 367 (Mo.App.1973).

3. This action was brought pursuant to the Missouri Merchandising Practices Act (the Act), Mo.Rev.Stat., ch. 407. Under § 407.020 of the Act:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, is declared to be an unlawful practice.

4. Section 407.010 defines "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate or services." For purposes of these preliminary proceedings, the Court concludes that the memberships offered by Missouri Trails, while conveying no interest in real estate, constitute merchandise within the balance of the broader definitions of the statute.

5. Under *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981), issuance of a preliminary injunction involves consideration of (a) the threat of irreparable harm to movant; (b) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (c) the probability of movant's success on the merits; and (d) public interest.

6. The Court first addresses the question whether the NCUAB should be preliminarily enjoined from selling right, title, or interest to the Missouri Trails Resort property as to which it has a deed of trust. In so doing, the Court, without reaching or rejecting the NCUAB's argument that federal law is applicable, considers the NCUAB's status under the Missouri Act pursuant to which this case was brought. Applying the Act's proscriptions to the State's claims against the NCUAB, the Court sees a lack of probability of success on the merits.

7. The State alleges fraud or impropriety by Zionic in the acquisition of the deed of trust, and asserts actual notice by the NCUAB of wrongdoing. Thus, the State argues, the NCUAB cannot establish a complete defense to this fraud.

This is not an action to set aside any promissory notes payable to Zionic from persons outside the field of Zionic's membership. Purchasers of Missouri Trails memberships signed a contract explicitly disavowing any interest in the real property which is the subject of the deed of trust involved in this lawsuit. Whether or not the NCUAB may enforce the notes improperly issued by Zionic is not before this Court. There is an absence of evidence suggesting that Zionic's action in accepting a deed of trust on Missouri Trails property as collateral for loans, constituted fraud or misrepresentation by Zionic, with intent that others rely on it in connection with the sale or advertisement of any merchandise. This suggests that the State may lack a basis for relief with respect to Zionic's acquisition of the deed of trust.

Nor is the State's position enhanced by the fact that the deed of trust was given to Zionic as collateral for loans, possibly intended to replace Zionic's previous illegal investments. Assuming the truth of this hypothesis arguendo, it is Zionic's shareholders—whose interests are represented by the NCUAB—who were injured by this transaction, and no damage can be claimed on the part of Missouri Trails members with no legal or equitable interest in the property. Thus, the Court must preliminarily reject the State's efforts to broaden the Act's coverage in this way. There appears no reason that a non-violator should forfeit a perfected security interest for the benefit of persons who may have been injured by another party's unrelated violations.

8. In considering whether to preliminarily enjoin defendants Missouri Trails and Fisher in accordance with the temporary restraining order currently in effect, the Court will apply Missouri law which establishes that "[t]he injunctive relief provided for in § 407.100 is remedial, not punitive, and therefore the statutes should be given a liberal construction." *State ex rel. Ashcroft v. Marketing Unlimited*, 613 S.W.2d 440, 445 (Mo.App.1981).

9. Particularly in light of the Court's decision not to enjoin the NCUAB from initiating foreclosure proceedings, it appears that irreparable harm may result to those persons whose interests are represented by plaintiff if the Court does not enjoin further sales of Missouri Trails memberships and misrepresentations as to the Missouri Trails Resort facilities. From the evidence adduced at the hearing, it appears probable that the State will be able to prove violations of the Act by these defendants, especially in regard to construction of a lodge. The evidence before the Court suggests that Missouri Trails continued to represent that construction of a lodge was imminent long after it became evident that construction was not financially viable. It also appears that misrepresentations were made, and are likely to be made if not enjoined, concerning other facilities at the resort.

Public interest in this case supports the need for an injunction as set forth above, and any injury which may result to Missouri Trails and Fisher by this injunction is outweighed by the harm which may result to persons purchasing memberships in a resort which may be seriously underfinanced.

10. The Court declines to extend the injunctive restrictions of paragraph E of the temporary restraining order, and further declines to appoint a receiver at this time.

The evidence thus far adduced suggests only misrepresentations in connection with efforts to obtain funds for financing and does not thus far support an inference that Missouri Trails funds have been improperly diverted by either of these defendants. Appointment of a receiver is discretionary under § 407.100 and the Court will exercise its discretion not to do so.

## ORDER

A memorandum dated this day is hereby incorporated into and made a part of this order.

IT IS HEREBY ORDERED that the temporary restraining order entered herein on April 17, 1985, be and the same is dissolved.

IT IS HEREBY FURTHER ORDERED that defendants Missouri Trails Resort Corporation and Howard W. Fisher be prohibited from:

A. Misrepresenting the commencement and/or completion date of various improvements on Missouri Trails Resort Club, including a Lodge, Tennis Courts, and a Riding Stable;

B. Misrepresenting to individuals that they would receive a "free" membership to Missouri Trails Resort Club;

C. Misrepresenting to individuals that repair and/or completion work will begin immediately on Missouri Trails Resort Club sewage lagoon, roads and bridge;

D. Advertising, offering for sale, or selling recreational memberships for Missouri Trails Resort Club within or without the State of Missouri until such time as this Court further orders.

IT IS HEREBY FURTHER ORDERED that all discovery requests shall be filed no later than May 7, 1985, with responses due by May 10, 1985.

## SUPPLEMENTAL MEMORANDUM

██ This matter is before the Court on plaintiff's request for a permanent injunction pursuant to plaintiff's second amended complaint.

Plaintiff, State of Missouri, filed this action on April 8, 1985, in the Circuit Court of Franklin County, Missouri, to enjoin alleged violations of the Missouri Merchandising Practices Act, Mo.Rev.Stat. ch. 407, as well as to obtain other forms of equitable relief. The case was removed by defendant, National Credit Union Administration Board (NCUAB), on the same date, and the State filed an amended complaint on April 9, 1985. A hearing on the State's preliminary injunction request was held on April 16 and 17, 1985, with argument heard on April 24, 1985. On April 26, 1985, this Court rendered findings of fact, conclusions of law, and an order enjoining defendants Missouri Trails Resort Corporation and Howard W. Fisher from:

A. Misrepresenting the commencement and/or completion date of various improvements on Missouri Trails Resort Club, including a Lodge, Tennis Courts, and a Riding Stable;

B. Misrepresenting to individuals that they would receive a "free" membership to Missouri Trails Resort Club;

C. Misrepresenting to individuals that repair and/or completion work will begin immediately on Missouri Trails Resort Club sewage lagoon, roads and bridge;

D. Advertising, offering for sale, or selling recreational memberships for Missouri Trails Resort Club within or without the State of Missouri until such time as this Court further orders.

A hearing on the State's permanent injunction request was held on June 28, 1985. At the close of the evidence, defendant NCUAB renewed its motion to dismiss. After careful consideration of the evidence introduced by plaintiff at the hearing, as well as all evidence previously adduced in this matter, the Court enters the following additional findings of fact and conclusions of law.

### Findings of Fact

1. Richard Ross was employed as a salesman for defendant Fisher and worked under the supervision of Roger Smith. Ross presented additional testimony supporting the Court's earlier finding that throughout the sales of Missouri Trails memberships, prospective members were told that various amenities, including a tennis court, riding stables, lodge, and pool, would be constructed. Plaintiff also introduced into evidence a purchase contract and promissory note executed by Ross for a membership in Missouri Trails.

2. Raymond Stillwell and James Bell testified that they were misled by representatives of Missouri Trails when purchasing their memberships. Plaintiff introduced into evidence a guarantee to Bell and the purchase contract and promissory note executed by Stillwell related to their respective memberships.

3. The Attorney General's Office received numerous complaints about the defendants during the relevant time period.

4. The additional evidence supports the Court's earlier finding that from the inception of Missouri Trails and until the liquidation of Zionic on June 6, 1984, purchasers of memberships in Missouri Trails Resort were offered a loan of the purchase monies from Zionic on completion of a promissory note and an application for credit, and various Missouri Trails employees were also offered "free" memberships at the resort.

5. At the present time, defendant NCUAB remains in possession of the assets of Zionic, including approximately 300 promissory notes executed by members of Missouri Trails for their membership purchases.

6. Subsequent to this Court's refusal to enjoin defendant NCUAB, that defendant then foreclosed on the deed of trust Missouri Trails had granted to Zionic for the 28.87 acres of real estate that comprises the Missouri Trails resort facility. Defendant NCUAB acquired title and is now making efforts to sell that same property.

7. NCUAB stated for the record that if the Missouri Trails resort facility in Franklin County, Missouri, is not run as a campground resort for those who have been Missouri Trails members, the NCUAB does not intend to collect on the promissory notes at issue. NCUAB has not brought a single suit nor does it intend to bring suit against the makers of these notes, unless the campground is reopened for their use and there later exists some future default. It is not possible, therefore, for the Court to predict the circumstances under which NCUAB might move to collect on the notes.

8. The plaintiff is now seeking to enjoin NCUAB from collecting on the promissory notes. Plaintiff seeks further injunctive relief against the remaining defendants as well as a finding of liability pursuant to Mo. Rev. Stat. § 407.100.

*Conclusions of Law*

1. Pursuant to 12 U.S.C. § 1789, any civil suit to which NCUAB is a party is deemed to arise under the laws of the United States. NCUAB properly removed this action to the federal court because it was named as a party defendant. NCUAB now moves to dismiss the complaint as to itself.

2. The evidence is that NCUAB is neither collecting nor dispersing funds related to the promissory notes that are the subject of the dispute in this matter. At this point, NCUAB is merely the temporary holder of those notes for purposes of liquidating Zionic's assets and has no intention of collecting on those notes that plaintiff seeks to enjoin it from collecting.

3. Plaintiff did not introduce any new evidence sufficient to change the Court's earlier determination that there is no reason NCUAB "should forfeit a perfected security interest for the benefit of persons who may have been injured by another party's unrelated violations." Order at 14, filed April 26, 1985 (denying preliminary injunction as to defendant NCUAB).

4. The Court further finds that the appropriate forum for the ultimate determination of the enforceability of the promissory notes will be a state court proceeding between the holders and the makers of those notes. Mo.Rev.Stat. § 400.3–301. In the case at hand, with hundreds of makers of hundreds of notes, it would be premature and presumptuous for this Court to determine the equities between the various future holders and makers at this point in time. Accordingly, the Court will grant defendant NCUAB's renewed motion to dismiss as to defendant NCUAB.

5. This matter was removed to this Court because NCUAB was a named party defendant. 12 U.S.C. § 1789(a)(2). Since

the rights of many of the parties hereto may depend in large measure upon the applicability and construction of Chapter 407, R.S.Mo. (1978), it is more appropriate that such determination be made, at least in the first instance, by the state court. Accordingly, this cause is remanded to the state court. *See Bor-Son Building Corporation v. Heller,* 572 F.2d 174, 181 n. 13 (8th Cir.1978).