**In re Yvonne EPPS, Debtor.**

**Yvonne EPPS, Plaintiff,**

v.

**LOMAS MORTGAGE USA, INC. and U.S. Department of Housing and Urban Development, et al., Defendants.**

**Bankruptcy No. 88–14204S.
Civ. A. No. 89–7713.**

United States District Court,
E.D. Pennsylvania.

Feb. 13, 1990.

Geoffry Walsh, Philadelphia, Pa., for plaintiff.

Gary E. McCafferty, Philadelphia, Pa., for Lomas Mortgage USA, Inc.

Virginia R. Powel, Asst. U.S. Atty., for U.S. Dept. of Housing & Urban Development and Jack Kemp.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

At issue in this adversary proceeding is the interplay of Bankruptcy Code Chapter 13 with post-assignment relief under the Department of Housing and Urban Development's (HUD's) Mortgage Assignment Program. Before the court are defendant HUD's motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, and 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the motions will be denied.

It is undisputed that on April 19, 1974, plaintiff Yvonne Epps and her husband Thomas Epps purchased a home located at 2419 North 77th Avenue, Philadelphia. Their purchase was financed with a $15,450 loan from Lomas and Nettleton Company (Lomas and Nettleton),[1] in exchange for which the Eppses gave Lomas and Nettleton a note and a purchase money mortgage secured by the premises. The loan was to be repaid over twenty-five years at an interest rate of eight and one-half percent. Significantly, the Federal Housing Administration (FHA) insured the loan pursuant to the National Housing Act (NHA), 12 U.S.C. § 1701 *et seq.* Although plaintiff separated from her husband after its purchase, the home has continued to serve as her principal residence since 1974.

After defaulting on her mortgage payments in 1981, plaintiff requested HUD to accept an assignment of the mortgage and to act as mortgagee pursuant to 12 U.S.C. § 1715u(b)(1). HUD acceded to plaintiff's request and took the assignment from Lomas and Nettleton on December 18, 1981. When plaintiff became delinquent in payments to HUD, HUD's field office recommended foreclosure. On January 1, 1988, HUD's Office of General Counsel assigned the mortgage and note to defendant Lomas Mortgage USA, Inc. (Lomas). Lomas had a contractual duty to HUD to foreclose the mortgage. Then, on December 2, 1988, plaintiff filed a petition under Chapter 13 of the Bankruptcy Code.

Lomas filed a proof of claim in plaintiff's bankruptcy case on December 30, 1988. Specifically, Lomas claims $19,112.46 in prepetition arrears and a current principal balance of $13,698.40.

On June 21, 1989, plaintiff filed an adversary complaint in bankruptcy court against HUD, Lomas, HUD Secretary Jack Kemp, and the Chapter 13 trustee, Edward Sparkman. The defendants responded on August 1, 1989 by filing three related motions.

First, HUD contended that the adversary proceeding was an "unrelated non-core proceeding" and moved pursuant to 28 U.S.C. § 157(d) for the withdrawal of the automatic reference to the bankruptcy court. Second, HUD and Secretary Kemp moved the bankruptcy court to stay the adversary

---

1. The conduct of Lomas and Nettleton as original mortgagee is not at issue in this proceeding. None of the parties contends that there is or was any relationship between Lomas and Nettleton, a Connecticut corporation, and defendant Lomas Mortgage USA, Inc., a Texas corporation.

proceeding pursuant to Bankruptcy Rule 5011(c) until this court disposed of the motion to withdraw its reference. Finally, HUD filed in this court the instant motions to dismiss.

On August 8, 1989, the bankruptcy court denied defendants' motion to stay. On October 19, 1989 this court granted HUD's motion to withdraw the reference and ordered that the adversary proceeding be returned to the district court.[2]

In her adversary complaint and in the brief opposing HUD's motions to dismiss, plaintiff asserts that HUD entered into several forbearance agreements with her subsequent to the assignment from Lomas and Nettleton. Complaint ¶ 13. According to plaintiff, those agreements provided for suspended payments of pre-assignment arrears on interest, principal, and escrow charges in addition to partial forbearance of payments of principal and interest due under the original mortgage and note. Complaint ¶ 13.

Plaintiff also contends that at no time after HUD accepted assignment of the mortgage did the agency give plaintiff clear notice that her rights under the assignment program had terminated. Complaint ¶ 16. Neither had HUD, in the period after the forbearance agreements ended, met with plaintiff to agree upon terms for repayment of forbearance period escrow advances and accrued post-forbearance period interest and escrow advances. Complaint ¶ 17. Furthermore, after the forbearance period ended, HUD neglected to review plaintiff's financial condition to ascertain whether programs could be developed to assist plaintiff in repaying pre-assignment arrears and forborne portions of post-assignment payments. Complaint ¶ 18. Finally, HUD never considered recasting the mortgage or extending its maturity date in order to realize full payment. Complaint ¶¶ 18, 19.

Plaintiff proposes to cure mortgage arrearages through her Chapter 13 plan pursuant to 11 U.S.C. §§ 1322(b)(3) and (5) while continuing to make regular postpetition payments of principal and interest outside the plan. Complaint ¶ 21. Arguing that HUD is obligated to manage the Mortgage Assignment Program consistently with the consent decree in *Ferrell v. Harris*, No. 73–C–334 (N.D. Ill.1976), Complaint ¶ 25, plaintiff states that that consent decree mandates that HUD service plaintiff's mortgage consistently with 24 C.F.R. §§ 203.650–66 (1989) and the *Administration of the Home Mortgage Assignment Program*, HUD Handbook # 4330.2 (1979), Complaint ¶ 26, and that HUD foreclose the mortgage consistently with the *Secretary–Held Servicing Handbook*, HUD Handbook # 4335.2 (1986). Brief for Plaintiff at 10–11. According to plaintiff, Lomas is HUD's agent, Complaint ¶ 15, and Handbook # 4330.2 circumscribes the charges that HUD alone or through Lomas can require plaintiff to cure in her plan. Complaint ¶ 27. Consequently, plaintiff objects to Lomas's proof of claim because it unlawfully seeks the following: (a) accrued forbearance period interest on the full out-

---

**2.** In its motion to withdraw the reference, HUD contended that the following were true: that it had assigned all of its rights in plaintiff's mortgage to Lomas; that Lomas was not its agent; and that HUD itself had not filed a proof of claim in plaintiff's bankruptcy proceeding. HUD asserted that, as a consequence, any claim that plaintiff had against HUD did not concern administration of the estate or any other core proceeding listed in 28 U.S.C. § 157(b)(2). Moreover, claims against HUD were not related to the title 11 case and, therefore, would not fall within the ambit of 28 U.S.C. § 157(c)(1). Thus, HUD argued, the court was free to exercise the discretionary authority granted in 28 U.S.C. § 157(d) to withdraw the reference. Finally, HUD reasoned that § 157(d) required a mandatory withdrawal since resolution of the adversary proceeding would call for the consideration not only of Chapter 13 but also of the NHA: a law regulating activities that affect interstate commerce.

I concluded that if HUD were able to support its contentions and to demonstrate that Lomas was not its agent, the adversary proceeding would be an "unrelated non-core proceeding." Accordingly, I withdrew the reference so that HUD could raise in the dispositive motions *sub judice* issues concerning HUD's relationship with Lomas and with the bankruptcy proceedings. I further determined that even if an agency relationship were found between HUD and Lomas, resolution of the adversary proceeding would require consideration of both Chapter 13 and the NHA.

standing mortgage balance; (b) pre-assignment interest, principal, and escrow charges; and (c) post-assignment, prepetition escrow charges, including tax advances. Complaint ¶ 28.

Additionally, plaintiff contends that HUD's duties under Handbooks # 4330.2 and # 4335.2 require the agency to evaluate the prospects for reinstatement of an assignment program mortgage prior to HUD's recommending foreclosure and even after foreclosure litigation is commenced. Complaint ¶ 32, Brief for Plaintiff at 10–11. Indeed, plaintiff asserts that HUD is bound to consider the following alternatives to foreclosure: (a) development of a repayment program that would enable plaintiff to reinstate the mortgage and pay it in full by its original maturity date; and (b) calculation of a plan to pay amounts in default over a mortgage term extended ten years beyond the original maturity date should HUD determine that there is not a reasonable prospect of plaintiff fully paying the mortgage balance by the original 1999 maturity date.

Accordingly, plaintiff prays for the following relief: that Lomas's proof of claim be disallowed; that HUD and Secretary Kemp accept reassignment of the mortgage and restore plaintiff to active participation in the Mortgage Assignment Program; that HUD and Secretary Kemp develop a repayment program that will extend or recast the mortgage in a manner that will make possible plaintiff's curing of arrearages and full payment of her mortgage balance; and finally, that any proof of claim that HUD files in the bankruptcy proceeding be disallowed to the extent that it includes amounts that the HUD Handbooks do not permit.

## I. SUBJECT MATTER JURISDICTION

Defendant HUD now moves, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the adversary proceeding against the agency. HUD asserts not only that the doctrine of sovereign immunity shields it from suit but also that plaintiff's claims against HUD are not within this court's subject matter jurisdiction.

To buttress its invocation of the sovereign immunity bar, HUD maintains that the NHA provides no waiver of such immunity. HUD submits that, as a consequence, the only possible source of a waiver is 11 U.S.C. § 106. Section 106 provides as follows:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any *claim* against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's *claim* arose.

(b) There shall be offset against an allowed *claim* or interest of a governmental unit any *claim* against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and *notwithstanding any assertion of sovereign immunity*—

(1) a provision of this title that contains "creditor", "entity", [sic] or "governmental unit" applies to governmental units; *and*

(2) a *determination* by the court *of an issue arising under such a provision* binds governmental units.

11 U.S.C. § 106 (emphasis added). According to HUD, it has never filed a proof of claim in plaintiff's bankruptcy proceeding. Moreover, the agency contends that it assigned all of its rights and interest in plaintiff's mortgage and note to Lomas prior to the filing of the Chapter 13 petition. Hence, HUD concludes, it has never asserted the sort of "claim" against plaintiff-debtor's estate that under §§ 106(a) and (b) constitutes a consent to suit. Furthermore, HUD argues that § 106(c) evinces no Congressional intent to abrogate the immunity of governmental units that make no claim on the debtor's estate. Therefore, because a waiver cannot be found in § 106, HUD submits that the wall of sovereign immunity bars claims against the agency in the instant proceeding.

In addition, HUD argues that even if sovereign immunity is deemed waived, the court has no subject matter jurisdiction to

entertain the claims against the agency. HUD assumes that the only possible basis for jurisdiction is 28 U.S.C. § 1334(b). That section provides as follows:

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, *or arising in or related to cases under title 11.*

28 U.S.C. § 1334(b) (emphasis added). Reasserting its contentions that Lomas is not its agent, that it has relinquished all rights in the mortgage and note, and that it asserts no claim upon the debtor's estate, HUD maintains that should the court order that plaintiff be allowed to cure her mortgage defaults or that foreclosure actions cease, such order would be directed against Lomas alone—the only party in interest. Consequently, the adversary proceeding against HUD is not "arising in or related to" the Chapter 13 proceeding and subject matter jurisdiction is absent.

Plaintiff does not address possible statutory bases for the court's subject matter jurisdiction. Rather, plaintiff makes a blanket assertion that the court does have subject matter jurisdiction and that HUD's sovereign immunity is waived by HUD's own authorizing statute, 12 U.S.C. § 1702, under which HUD consents "to sue and be sued in any court of competent jurisdiction, State or Federal."

■ Both the defense that the sovereign immunity doctrine bars a cause of action against the United States, its agents or officers, and the defense that a plaintiff fails to allege a basis for the court's subject matter jurisdiction are properly brought under Rule 12(b)(1). *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350 (Supp.1989). The possibility that averments in the complaint might fail to state a cause of action on which plaintiff could actually recover does not defeat jurisdiction. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 775, 90 L.Ed. 939, 943 (1946); *accord Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir.1974). Where,

as here, a Rule 12(b)(1) motion to dismiss attacks the existence of subject matter jurisdiction in fact rather than the complaint's facial allegations of such jurisdiction,

> no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977); *see also Kronmuller v. West End Fire Co. No. 3,* 123 F.R.D. 170, 172 (E.D. Pa.1988) (same); *Millipore Corp. v. University Patents, Inc.,* 682 F.Supp. 227, 231 (D.Del.1987) (on a factual challenge to subject matter jurisdiction, court can consider deposition testimony, affidavits, declarations and documents); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350 (1969) at 549–53.

## A. SOVEREIGN IMMUNITY

Like the recent dismantling of the Berlin wall, HUD's protective wall of sovereign immunity must come down but not for the reasons put forth by the parties herein.

■ It is axiomatic that the United States, as sovereign, is immune from suit absent its expressed waiver of that immunity. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580, 588 (1983); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058, 1061 (1941). The sovereign immunity defense is jurisdictional, and a suit may not be brought unless a waiver is found. *Mitchell,* 463 U.S. at 212, 103 S.Ct. at 2965, 77 L.Ed.2d at 588. Although its reasoning is superficial, HUD is correct that 11 U.S.C. § 106 does not waive the agency's immunity in this action. Even if it is assumed that Lomas is HUD's agent and that HUD has vicariously filed a "claim" against the debtor's estate in the sense that "claim" is used in §§ 106(a) and (b), plaintiff herself does not seek money from HUD in the adversary proceeding and

has not, therefore, filed a claim.[3] As the Supreme Court recently concluded, the word "claim" in §§ 106(a) and (b) means "a right to payment," and neither § 106(a) nor § 106(b) is applicable where either the government or its adversary has not asserted a "claim." *Hoffman v. Connecticut Dep't of Income Maintenance,* — U.S. —, —, 109 S.Ct. 2818, 2822–23, 106 L.Ed.2d 76, 84 (1989). Consequently, because plaintiff has not filed a § 106 "claim", the only possibility for a § 106 waiver must be found in § 106(c).

In *Hoffman,* the Supreme Court reasoned that,

> [t]he language of § 106(c)(2) is more indicative of *declaratory and injunctive* relief than of monetary recovery.... The section applies to the Federal Government ... and the language in § 106(c) waives the sovereign immunity of the Federal Government so that the Federal Government is bound by determinations of *issues* by the bankruptcy courts even when it did not appear and subject itself to the jurisdiction of such courts.

*Hoffman,* — U.S. at —, 109 S.Ct. at 2823, 106 L.Ed.2d at 84–85 (emphasis added). Despite the Court's conclusion that § 106(c) waives the federal government's

---

3. Although I do not subscribe to such tenuous reasoning, it could be argued that to the extent that plaintiff seeks to obtain further forbearance from HUD on interest and principal due under the original mortgage contract, plaintiff is seeking damages to compensate her for HUD's failure to act consistently with the *Ferrell* consent decree and the HUD Handbooks. After all, money has time value and use value, and interest is simply money paid for the use of other money. Indeed, a money lender's forbearance of interest is equivalent to his paying additional money to a borrower. The fact that plaintiff desires HUD to forbear from collecting fully or foreclosing on the mortgage and to refrain from collecting interest beyond that allowed under the contract's original twenty-five year term could be characterized as an attempt to obtain monetary relief, not equitable relief. By forbearing on sums due under the original contract and by providing mortgage foreclosure relief, HUD would in essence be paying plaintiff a sum equal to the amount of money that HUD would earn on the principal, interest, and escrows were they paid in a timely fashion. *See generally Bowen v. Massachusetts,* 487 U.S. 879, 891–95, 108 S.Ct. 2722, 2731–32, 101 L.Ed.2d 749, 763, 768 (1988) (an action at law for damages is one intended to provide a victim with monetary compensation for an injury to his person, property, or reputation); D. Dobbs, *Handbook on the Law of Remedies* 135, 164 (1973) (damages are given to the plaintiff to *substitute* for a suffered loss, and interest is money paid for the use or forbearance of money).

Were I to find such reasoning persuasive, and were I to find an agency relationship between HUD and Lomas (which I do find in my discussion of subject matter jurisdiction below), plaintiff's complaint would contain a "claim" sufficient under §§ 106(a) and (b) for Lomas's proof of claim to constitute a consent by HUD to suit.

Moreover, if the court were to read the adversary complaint as containing a claim for damages against HUD, that agency's sovereign immunity would be waived under 12 U.S.C.

§ 1702. Section 1702 of the NHA provides as follows:

> ... The Secretary [of Housing and Urban Development] shall, *in carrying out* the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX–A, IX–B, and X of this chapter, be authorized, in his official capacity, to *sue and be sued* in any court of competent jurisdiction, State or Federal.

12 U.S.C. § 1702 (emphasis added). The Supreme Court has held that § 1702 permits suits to be brought not only against HUD's Secretary but also against the agency itself. *Federal Hous. Admin. v. Burr,* 309 U.S. 242, 249–50, 60 S.Ct. 488, 492, 84 L.Ed. 724, 731 (1940); *see also Loeffler v. Frank,* 486 U.S. 549, 562–63 n. 8, 108 S.Ct. 1965, 1973 n. 8, 100 L.Ed.2d 549, 562 n. 8 (1988). Such suits are confined to those in which HUD acts to "carry out" the provisions of the enumerated subchapters and in which the plaintiff's claim is of the type for which a private enterprise doing business in the commercial world would be liable. *See Burr,* 309 U.S. at 245, 60 S.Ct. at 489, 84 L.Ed. at 729; *Armor Elevator Co. v. Phoenix Urban Corp.,* 655 F.2d 19, 21 (1st Cir.1981); *United States v. Yonkers Bd. of Educ.,* 594 F.Supp. 466, 471–72 (S.D.N.Y. 1984) (distinguishing civil rights actions against HUD, which arise out of the agency's sovereign duties, from actions that involve HUD's commercial relationships). Thus, HUD has waived its sovereign immunity under § 1702 in damage suits in which liability is grounded on HUD's role as mortgagee under the Mortgage Assignment Program. *See, e.g., Armor Elevator Co.,* 655 F.2d at 21 (HUD can be sued for damages where it assumes the role of mortgagee); *Griffin v. Harris,* 480 F.Supp. 1072, 1075–76 (E.D.Pa. 1979) (mortgage assistance and mortgage assignment programs of the NHA fall within the subchapters enumerated in § 1702's waiver provision).

Nevertheless, as discussed below, I have chosen what I believe to be the better course: I characterize plaintiff's complaint as seeking only specific, equitable relief.

sovereign immunity in suits for equitable relief, however, such waiver does not exist where the Bankruptcy Code provisions upon which the trial court relies in fashioning equitable relief do not contain the "trigger words" in § 106(c)(1). *See id.,* — U.S. at —, 109 S.Ct. at 2823, 106 L.Ed.2d at 84 (subsection 106(c)(2) is joined with subsection (c)(1) by the conjunction "and," and the former is to be read as a further limitation on the latter). Because 11 U.S.C. § 1322(b) is the Code provision at issue in this adversary proceeding and does not contain any trigger words, § 106(c) does not waive HUD's immunity.

■ The parties seemingly have overlooked 5 U.S.C. § 702, the Administrative Procedure Act's waiver of federal government sovereign immunity in agency review actions that seek equitable relief. Section 702 provides as follows:

> A person suffering legal wrong because of *agency action,* or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States *seeking relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority *shall not be dismissed nor relief therein be denied on the ground that it is against the United States....*

5 U.S.C. § 702 (emphasis added). Plaintiff's adversary action against HUD is for specific, equitable relief. To be sure, plaintiff avers that she is entitled to active participation in the HUD assignment program; she seeks to have HUD restore her to such active participation and to comply with the *Ferrell* consent decree. Substitute remedies are unacceptable to her. Hence, HUD's sovereign immunity is waived under § 702 in the instant proceeding. *See Maryland Dep't of Human Resources v. Department of Health and Human Servs.,* 763 F.2d 1441, 1446 (D.C.Cir. 1985) (specific remedies attempt to give the

plaintiff the very thing to which she is entitled, unlike substitute remedies); *Jaffee v. United States,* 592 F.2d 712, 715 (3d Cir.1979), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979) (purportedly equitable action is not one for damages if it cannot be satisfied by the payment of money); *cf. Bowen v. Massachusetts,* 487 U.S. at 893–95, 108 S.Ct. at 2732, 101 L.Ed.2d at 764 (the fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages").

### B. JURISDICTIONAL BASIS

Notwithstanding HUD's assertions to the contrary, the court does have subject matter jurisdiction in this action under 28 U.S.C. § 1334(b), 28 U.S.C. § 1337(a), 28 U.S.C. § 1331(a) and federal common law.[4]

Because HUD attacks the existence of subject matter jurisdiction in fact, the court may examine documents attached to plaintiff's brief to evaluate the merits of plaintiff's jurisdictional averments. Whether there is jurisdiction under § 1334(b) depends on the existence of an agency relationship between HUD and Lomas. According to the Restatement (Second) of Agency:

> § 1 (1) Agency is the fiduciary relation which results from the *manifestation of consent* by one person to another that the other *shall act on his behalf and subject to his control, and consent by the other so to act.*
>
> (2) The one for whom the action is to be taken is the principal.
>
> (3) The one who is to act is the agent.
>
> . . . .
>
> § 7 *Authority* is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him.
>
> *Comment c:* It is possible for a principal to specify minutely what the agent is to do. To the extent that he does

---

**4.** 5 U.S.C. § 702 does not provide an independent grant of subject matter jurisdiction to review agency action. *Califano v. Sanders,* 430

U.S. 99, 105, 107, 97 S.Ct. 980, 984, 985, 51 L.Ed.2d 192, 199, 200–01 (1977).

this, the agent may be said to have *express authority*.

Restatement (Second) of Agency (1958) (emphasis added).

HUD's *Secretary–Held Servicing Handbook* refers to a contractor such as Lomas as a "foreclosure agent." Brief for Plaintiff, Appendix F at 10–11. Pursuant to its contract with HUD, Lomas carries out foreclosure proceedings on HUD-held properties. Brief for Plaintiff, Appendix A. Under the contract, HUD pays Lomas to carry out those foreclosures. Brief for Plaintiff, Appendix A at 5. Moreover, HUD reimburses Lomas for costs incurred throughout foreclosure proceedings. Brief for Plaintiff, Appendix A at 6. HUD's assignment of a mortgage to Lomas is specifically "for the purpose of foreclosure." Brief for Plaintiff, Appendix A at 15. Subject to specific HUD guidelines, Lomas may terminate or suspend foreclosure proceedings at various stages; if proceedings are terminated or suspended, however, Lomas must reassign the mortgage to HUD. Brief for Plaintiff, Appendix A at 18–21.

HUD referred plaintiff's case to Lomas for foreclosure on January 11, 1988. Brief for Plaintiff, Appendix B. Then, on January 20, 1988, Lomas sent plaintiff a Notice of Intention to Foreclose, which identifies plaintiff's mortgage as "held by Secretary of HUD." Brief for Plaintiff, Appendix C. Mortgage payments received from plaintiff subsequent to the assignment to Lomas and after filing of the bankruptcy petition were recorded on HUD's "Thrift" computer system in the same manner as payments made prior to the assignment to Lomas. Brief for Plaintiff, Appendix E.

■ Assuming the truth of these allegations, the court would conclude that HUD retains an interest in plaintiff's mortgage and premises, and that HUD, not Lomas, exercises ultimate control over the foreclosure proceedings. Moreover, HUD has consented to have Lomas act as its foreclosure agent and has given Lomas express

authority to carry out the foreclosure of plaintiff's mortgage in accordance with specific contractual and Handbook provisions. Lomas has consented contractually to act consistently with those provisions. Therefore, Lomas is HUD's agent and any court order requiring that plaintiff be allowed to cure her mortgage ·defaults or that foreclosure actions cease and that the mortgage be reassigned will be directed against HUD as well as against Lomas.[5]

The Court of Appeals for this Circuit has stated that an adversary proceeding is "related to" a bankruptcy case if the proceeding's outcome "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984), *quoted in Bobroff v. Continental Bank*, 766 F.2d 797, 802 (3d Cir.1985); *see also In re Fleet*, 53 B.R. 833, 838 (Bankr.E.D.Pa.1985). Section 1334(b) grants jurisdiction in adversary proceedings "arising in or related to cases under title 11." Because there is an agency relationship between HUD and Lomas, and because any relief that this court orders will be HUD's responsibility and will impact upon plaintiff's Chapter 13 plan, the instant adversary proceeding is "related to" the bankruptcy case and the court has jurisdiction under § 1334(b).

■ Additionally, the court has jurisdiction under 28 U.S.C. § 1337(a). That section provides:

> The district courts shall have original jurisdiction of any civil action or proceeding *arising under any Act of Congress regulating commerce* or protecting trade and commerce against restraints and monopolies
>
> . . . .

28 U.S.C. § 1337(a) (emphasis added). Plaintiff's complaint plainly states that her right to relief is founded upon and is the product of the NHA's Mortgage Assignment Program, 12 U.S.C. § 1715u(b), and

---

5. My conclusion that Lomas is HUD's agent does not foreclose HUD from offering contradictory evidence in proceedings on the merits and does not bar the court from revisiting the agency issue should further development of the record require it.

HUD guidelines and settlement obligations that fill in the interstices of that program. Because courts have held that national housing legislation regulates commerce within the meaning of § 1337, the district courts have jurisdiction over actions like this one that arise under the NHA. *See, e.g., Davis v. Romney*, 490 F.2d 1360, 1365–66 (3d Cir.1974) (commerce power is a significant source of power for NHA, which was largely designed to stimulate the building trades, increase employment, and control aspects of interstate commerce connected with mortgage financing); *accord Ellis v. United States Dep't of Hous. and Urban Dev.*, 551 F.2d 13, 15–16 (3d Cir.1977); *Griffin v. Harris*, 480 F.Supp. 1072, 1078 (E.D.Pa.1979). Accordingly, § 1337 provides this court with subject matter jurisdiction over plaintiff's adversary action against HUD. *Cf. Davis v. Ohio Barge Line, Inc.*, 697 F.2d 549, 552 (3d Cir.1983) ("we have … overlooked a complaint's reliance on jurisdictional statutes which are inapposite and instead independently ascertained whether there was any basis on which subject matter jurisdiction could be asserted"); *Bachowski v. Brennan*, 502 F.2d 79, 82 & n. 2 (3d Cir. 1974), *rev'd on other grounds*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975) (failure of complaint specifically to cite § 1337 does not prevent court from considering it as a basis for jurisdiction).

■ Finally, the court finds that plaintiff's averments invoke equitable rights that flow from HUD's course of activities pursuant to the NHA's Mortgage Assignment Program. Those rights arise under federal common law and fall within the federal question jurisdiction of 28 U.S.C. § 1331(a). Through the Mortgage Assignment Program, HUD attempts to realize the NHA's goal of providing decent, affordable housing to all citizens. 42 U.S.C. § 1441. HUD can direct that lenders holding mortgages on HUD-insured loans assign those mortgages to HUD in order to enable HUD to deal directly with mortgagors and to attempt to avoid foreclosures. 12 U.S.C. § 1715u(b)(1), 24 C.F.R. §§ 203.-650–60 (1989). HUD exercises complete control over the assignment program, from the time of initial assignment until ultimate payment or foreclosure. Therefore, the disposition of reassignment and foreclosure avoidance issues raised in plaintiff's complaint will require the application of equitable principles of federal common law. *See Trans–Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370, 377–78 (D.C.Cir. 1976) (HUD's obligation in section 236 program was based on "equitable rights generated by HUD's course of activities pursuant to federal statutes," and plaintiff's claim of right was dependent on federal common law); *Tempo, Inc. v. City of Gladstone Hous. Comm'n*, 635 F.Supp. 879, 883 (W.D.Mich.1984); *United States v. American Nat'l Bank & Trust Co.*, 443 F.Supp. 167, 171–72 (N.D.Ill.1977) (following *Trans–Bay* and finding that claim based on equitable rights generated by NHA arose under federal common law). *But see Jemo Assocs., Inc. v. Greene Metro. Hous. Auth.*, 523 F.Supp. 186, 188–89 (S.D. Ohio 1981) (where HUD's involvement in case was merely collateral to disputed contract, where remedies plaintiffs sought were created by state law, and where plaintiffs sought damages rather than equitable relief, action was distinguishable from *Trans–Bay* and did not arise under federal common law). Hence, § 1331(a) provides the court with an additional basis for subject matter jurisdiction over plaintiff's adversary action.

## II. HUD AS A PROPER PARTY

■ Pursuant to Federal Rule of Civil Procedure 12(b)(2), HUD further moves to dismiss the adversary proceeding against the agency for lack of personal jurisdiction. In support of its motion, HUD contends that it is not a proper party to the proceeding because it has assigned all of its rights and interest in the subject premises to Lomas. Plaintiff does not object to HUD's characterization of the motion as one brought pursuant to Rule 12(b)(2), and she responds that HUD is Lomas's principal and is, therefore, a proper party to the proceeding.

Why HUD moved under Rule 12(b)(2) is incomprehensible. Personal jurisdiction is

a matter of the court's power over the person of a defendant. Since HUD has regional and area offices in Philadelphia,[6] the court clearly has personal jurisdiction over HUD.[7]

I will treat the motion as one brought pursuant to Federal Rule of Civil Procedure 21. *See* 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1687 (1986) at 465 ("the court has the authority to invoke Rule 21 of its own initiative"). Rule 21 provides in part as follows:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just....

Fed.R.Civ.P. 21. Thus, if the court were to find that HUD was misjoined because relief that plaintiff seeks does not make necessary the agency's presence in the action, HUD would be dropped as an improper party under Rule 21. *See, e.g., Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972) (proper remedy in case of misjoinder is to grant severance or dismissal to improper party under Rule 21 if it will not prejudice any substantial rights); *Hispanic Coalition on Reapportionment v. Legislative Reapportionment Comm'n*, 536 F.Supp. 578, 583–84 (E.D.Pa.1982) (requested relief did not make joinder of certain defendants necessary and they were dropped under Rule 21).

Not only can a Rule 21 motion be brought pre-answer like a Rule 12(b) motion but such a motion can also be treated like a Rule 12(b) motion. If a Rule 21 motion is so treated, it is then subject to the rules and practices applicable to the most analogous Rule 12(b) motion. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1360 (1969) at 632–33, 641. Because the general rule is that Rule 12(b) motions "speak," 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1364 (1969) at 662–64, and because the court treats HUD's Rule 21 motion as a Rule 12(b) motion, the court will look to documents attached to the parties' briefs to determine whether HUD is properly joined as a party in the instant proceeding.

As noted above in my discussion of subject matter jurisdiction, documents attached to plaintiff's brief point to a HUD–Lomas agency relationship in which HUD retains an interest in plaintiff's mortgage and premises, in which HUD exercises ultimate control over the foreclosure proceedings, and in which, consequently, HUD will be responsible for any relief that the court might order. Therefore, HUD is a proper party to the adversary proceeding and the motion will be denied.

## III. FAILURE TO STATE A CLAIM

Lastly, HUD contends that plaintiff's complaint fails to state a claim upon which relief can be granted and moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[8]

---

6. HUD's offices are located at 105 South Seventh Street, Philadelphia.

7. It is possible that HUD is arguing that if it is dropped as an improper party, the court will not have personal jurisdiction over the remaining parties and will have to dismiss the proceeding. However, even as to defendant Lomas, which is a Texas corporation, neither party addresses the court's personal jurisdiction, and there is no evidence or contention that there are state statutory limitations on the court's jurisdiction over Lomas or that Lomas's foreclosing on mortgages secured by Pennsylvania property fails to satisfy constitutionally-required due process contacts.

8. HUD also moves for summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56, but the agency's motion is made on the

basis of the complaint alone. "If the [summary judgment] motion is made by the defendant solely on the basis of the complaint, the motion is functionally equivalent to a motion to dismiss for failure to state a claim under Rule 12(b)(6); the complaint should be liberally construed in favor of the complainant; the facts alleged in the complaint must be taken as true; and the motion for summary judgment must be denied if a claim has been pleaded." 6 J. Moore, *Moore's Federal Practice* ¶ 56.11[2] (2d ed.1988); *see also In re Penn Cent. Sec. Litig.*, 347 F.Supp. 1324, 1342 (E.D.Pa.1972), *modified in part on other grounds*, 357 F.Supp. 869 (E.D.Pa.1973), *aff'd*, 494 F.2d 528 (3d Cir.1974) (same); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2713 (1983) at 594 (same). Accordingly, I will treat the Rule 56 motion as a Rule 12(b)(6) motion.

According to HUD, 12 U.S.C. §§ 1715u(a)(2) and (b) and 24 C.F.R. § 203.650(a)(6) provide the relevant statutory and regulatory authority for the Mortgage Assignment Program involved in this action.[9] HUD insists that after it acquired plaintiff's mortgage from Lomas and Nettleton, § 1715u(b)(2) then authorized it to provide plaintiff with forbearance of principal and interest for eighteen months. By HUD's reading, § 1715u(a)(2) and 24 C.F.R. § 203.650(a)(6) provide that such assistance is available only if HUD's Secretary determines that there is a reasonable prospect that a mortgagor like plaintiff will be able to resume full monthly mortgage payments within thirty-six months of assignment and will eventually be able to pay the mortgage in full. HUD further submits that § 1715u(b)(2) mandates that the eighteen-month forbearance period may at most be extended an additional eighteen months, for a total of thirty-six months. Hence, HUD argues that because plaintiff has received the maximum allowed thirty-six months of forbearance, and because § 1715u(a) and (b) and 24 C.F.R. § 203.650(a)(6) now bind her to the original monthly payments, plaintiff has received all of the legal relief to which she is entitled under the assignment program, and additional repayment programs requiring further forbearance are not permitted.

Additionally, HUD reasserts the argument that it relinquished all of its rights and interest in plaintiff's premises upon assignment of the subject mortgage and note to Lomas. HUD contends that, as a

9. Subsections 1715u(a)(2) and (b) provide in part as follows:

(a)(2) No payments may be provided under this subsection unless the Secretary has determined that such payments are necessary to avoid foreclosure and that there is a reasonable prospect that the mortgagor will be able—
(A) to resume full mortgage payments within thirty-six months after the beginning of the period for which such payments are provided or upon termination of assistance under this subsection;
(B) to commence repayment of the payments made under this subsection at a time designated by the Secretary; and
(C) to pay the mortgage in full by its maturity date or by a later date established by the Secretary for completing the mortgage payments.
(b)(1) When the Secretary receives notice of a default described in subsection (a)(1) of this section and makes a determination that assistance under subsection (a) of this section would be inappropriate in the case of the mortgagor, the Secretary, (for the purpose of avoiding foreclosure of the mortgage, and notwithstanding the facts described in the parenthetical material contained in subsection (a)(1) of this section and the fact that payments have been made under subsection (a) of this section with respect to the mortgage) shall, if determined necessary by the Secretary, acquire the mortgage and security therefor upon payment of the insurance benefits in an amount equal to the unpaid principal balance of the mortgage plus any unpaid mortgage interest and reimbursement for such costs and attorney's fees as the Secretary finds were properly incurred in connection with the defaulted mortgage and its assignment to the Secretary, and for any proper advances theretofore made by the mortgagee under the provisions of the mortgage. After the acquisition of such mortgage by the Secretary, the mortgagee shall have no further rights, liabilities, or obligations with respect thereto....
(2) The Secretary may provide assistance, to a mortgagor whose mortgage has been acquired under paragraph (1) of this subsection, through forebearance [sic] of interest or principal, or both, or through other means, for a period of not more than eighteen months after the acquisition of the mortgage, if the mortgagor has not been assisted under subsection (a) of this section within twelve months of the date of such acquisition and if the Secretary determines that there is a reasonable prospect that the mortgagor will be able to meet the conditions described in subsection (a)(2) of this section. Such period may be extended, in the Secretary's discretion, for not to exceed eighteen months where the Secretary has determined that such extension is necessary to avoid foreclosure and that there is a reasonable prospect that the mortgagor will be able to meet the conditions described in subsection (a)(2) of this section. 12 U.S.C. §§ 1715u(a)(2) and (b).
24 C.F.R. § 203.650(a)(6) provides as follows:
(a) The Secretary will accept assignments of mortgages insured under this part in order to avoid foreclosure when the following conditions are met:
....
(6) There is a reasonable prospect that the mortgagor will be able to resume full mortgage payments after a period of reduced or suspended payments not exceeding 36 months and will be able to pay the mortgage in full by its maturity date extended, if necessary, by up to ten years.
24 C.F.R. § 203.650(a)(6).

consequence, any relief that plaintiff seeks in her complaint can be obtained only from Lomas and that the complaint, therefore, fails to state a claim against HUD.

■ Applying the familiar rules dealing with motions to dismiss, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). The complaint may be dismissed only if "it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985). Although the court primarily considers only the naked averments in the complaint when deciding a motion to dismiss, documents that are attached to the complaint, as well as memoranda and briefs, are appropriate for consideration. *See, e.g., Swin Resource Sys., Inc. v. Lycoming County,* 883 F.2d 245, 247 (3d Cir.1989) (court may consider on motion to dismiss facts stated in deposition that fall within ambit of complaint); *Concordia v. Bendekovic,* 693 F.2d 1073, 1075 (11th Cir.1982) (memoranda and briefs are not considered matters outside the pleadings); *McElearney v. University of Illinois at Chicago Circle Campus,* 612 F.2d 285, 290 n. 3 (7th Cir.1979) (materials dehors the pleadings may be considered in passing on 12(b)(6) motion); *In re PHL–Corp. Sec. Tender Offer Litig.,* 700 F.Supp. 1265, 1268 (S.D.N.Y.1988) (documents attached to complaint as exhibits or incorporated by reference may be considered on 12(b)(6) motion); 5 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1357, 1363, 1364, 1366 (1969) at 593, 656, 672–73, and 680–83 (if court considers "evidence" outside the pleadings on 12(b)(6), the motion becomes one for summary judgment, but memoranda and briefs are not "evidence" sufficient to convert a 12(b)(6) motion, and the court may also take into account on a 12(b)(6) motion matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint).

The standard of review of HUD's action and inaction is found in § 706 of the Administrative Procedure Act, which provides in part as follows:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action *unlawfully withheld* or *unreasonably delayed;* and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) *arbitrary, capricious,* an *abuse of discretion,* or otherwise *not in accordance with law;*

. . . .

5 U.S.C. § 706 (emphasis added). *See, e.g., United States v. Antioch Found.,* 822 F.2d 693, 696 (7th Cir.1987) (HUD's decision to foreclose a mortgage is reviewable under APA, and courts will set aside foreclosure action that is arbitrary or capricious or that is an abuse of discretion, and burden is on mortgagor); *Brown v. Kemp,* 714 F.Supp. 445, 446 (W.D.Wash.1989) (HUD's decision on application for initial assignment program application is informal agency action that is subject to a narrow standard of review and that must be set aside if arbitrary, capricious, an abuse of discretion or not otherwise in accordance with law); *Equal Employment Opportunity Comm'n v. Bray Lumber Co.,* 478 F.Supp. 993, 996 (M.D.Ga.1979) (section 706(1) applies where, in disregard of its legal duty to act, a federal agency refuses to act).

In determining whether plaintiff states a claim that HUD "unlawfully withheld" or "unreasonably delayed" action, or that the agency's actions were "arbitrary," "capricious," an "abuse of discretion," or "not in accordance with law," the court must review HUD's conduct against the backdrop of the Mortgage Assignment Program and Chapter 13's cure provisions.

## A. *Mortgage Assignment Program*

To be sure, HUD has a statutory obligation to realize "as soon as feasible ... the goal of a decent home and a suitable living environment for every American family." 42 U.S.C. § 1441; *see also Brown v. Lynn*, 385 F.Supp. 986, 998 (N.D. Ill.1974). To achieve that goal, HUD insures under the NHA, 12 U.S.C. § 1701, mortgages of persons with low incomes. Their low incomes make such mortgagors more susceptible to mortgage default resulting from illness, temporary unemployment, and other vicissitudes. *Id.* at 1000. Should default occur, HUD can provide foreclosure avoidance relief by directing a lender to assign the insured mortgage to HUD. 12 U.S.C. § 1715u(b)(1).

In *Brown v. Lynn*, a class of homeowners suing HUD and private mortgagees alleged that precipitant foreclosures were occurring on HUD-insured mortgages because HUD was not enforcing directives in HUD Handbook # 4192.2, later renumbered HUD Handbook # 4330.2. On motions to dismiss, the district court reasoned that administrative guidelines that are not published in accordance with the Administrative Procedure Act do not have the force of law and are mere statements of policy. *Brown v. Lynn*, 385 F.Supp. at 998. Thus, unpublished Handbook 4192.2 did not bind the private mortgagees, and claims against those parties were dismissed. However, HUD's own failure to follow the Handbook's directives would, if proved, contravene national housing policy. As a result, the court concluded,

> [I]f HUD's policy on foreclosures has brought and continues to bring about a rash of unwarranted defaults and foreclosures as alleged, th[at] constitutes an abuse of discretion in violation of the National Housing Act.

*Id.* at 1000.

HUD settled the lawsuit by entering into a 1976 consent decree ("*Ferrell* consent decree"), modified in 1979, that created a detailed Mortgage Assignment Program. *Ferrell v. Pierce*, 560 F.Supp. 1344 (N.D.Ill. 1983), *aff'd*, 743 F.2d 454 (7th Cir.1984). In particular, HUD consented to take assignments of HUD-insured mortgages and "to administer the assignment program substantially in accordance with the terms" of Handbook # 4330.2. Although HUD agreed to comply with the Handbook's specific provisions only until 1984, the consent decree was clear that after 1984 the agency's obligations under the NHA would be undiminished. Indeed, HUD would be required to "provide assistance or relief in the form of the present assignment program or an equivalent substitute to permit mortgagors in default on their mortgages to avoid foreclosure and to retain their homes during periods of temporary financial distress." *Ferrell v. Pierce*, 743 F.2d at 456–58; *see also Armstead v. United States Dep't of Hous. and Urban Dev.*, 815 F.2d 278, 282 (3d Cir.1987) (Handbook # 4330.2's sections are instructive and may serve as indicia of whether procedures adopted in particular case for accepting assignment are "arbitrary and capricious").

The Mortgage Assignment Program set forth in Handbook # 4330.2 and outlined in 24 C.F.R. §§ 203.650 *et seq.* (1989) guides HUD in its determinations of when and on what terms to take a mortgage assignment. Initially, persons facing foreclosure are informed of their right to request that HUD take an assignment of their mortgage. HUD then applies six criteria to decide whether the mortgagor qualifies for an assignment. Each of the criteria must be satisfied for HUD to take an assignment. The sixth criterion provides as follows:

> (a) The Secretary will accept assignments of mortgages insured under this part in order to avoid foreclosure when the following conditions are met:
>
> . . . .
>
> (6) There is a reasonable prospect that the mortgagor will be able to resume full mortgage payments after a period of reduced or suspended payments not exceeding 36 months and will be able to pay the mortgage in full by its maturity date extended, if necessary, by up to ten years.

24 C.F.R. § 203.650(a)(6).

If an assignment is granted, HUD becomes the mortgagee and affords the bor-

rower up to thirty-six months of forbearance relief. During that forbearance period, the borrower is required to pay HUD only an established percentage of net income. The borrower is then expected to be able to tender a full mortgage payment, including escrows, at the conclusion of the forbearance period. Therefore, when the forbearance period ends, HUD and the borrower must establish a repayment program that requires at least full monthly mortgage payments. If the borrower's finances allow, greater than normal payments may be required. Additionally, HUD may extend the mortgage's original maturity date by up to ten years to allow the borrower to repay fully the mortgage loan, as long as the borrower's monthly payments themselves remain full. 24 C.F.R. §§ 203.650 *et seq.;* Handbook # 4330.2 chapter 5, at 5–1 through 5–4. *In re Santos,* 97 B.R. 227, 233–34 (Bankr.E.D.Pa.1989).

No court has yet considered whether the provisions of HUD's unpublished *Secretary–Held Servicing Handbook* # 4335.2 (1986) are consistent with the terms of the *Ferrell* consent decree and are, consequently, indicia of HUD's statutory obligation to promote national housing policy. Unlike Handbook # 4330.2, Handbook # 4335.2 provides guidelines for operating the Mortgage Assignment Program *after* HUD has taken an assignment and *after* HUD has determined the extent of forbearance relief to be afforded the borrower. The Handbook is particularly concerned with HUD's servicing of mortgages with post-assignment delinquencies. In order to guide field office supervisors in their servicing of such mortgages, the Handbook provides:

The following excerpt from the Amended Stipulation, dated August 2, 1979, in the Ferrell case is most pertinent[:]

"7) *HUD shall review and, as appropriate, restructure payment plans of assigned mortgages* to ensure that they are reasonable and comport with 24 C.F.R. 203.650–662 and Handbook 4191.2 under the following circumstances:

a. Before any action has been taken by reason of mortgagor default;

b. When the terms of such a plan expire;

c. When a plan is in default for three months or longer;

d. When the terms of an existing plan extend more than six (6) months from the Order date;

e. When a mortgagor so requests for good cause."

While the term of that stipulation has expired, HUD desires that equivalent standards apply.

Supervisors may be held responsible for the acts of their subordinates which do not conform to the letter and spirit of this agreement and Handbook.

Handbook # 4335.2 chapter 4, at 4–9.

Further sections of the Handbook provide, *inter alia,* that "[f]oreclosure is the last resort after it is evident that the mortgagor cannot, or will not, meet the mortgage obligation"; that if HUD has held a mortgage for more than thirty-six months, the forbearance agreement *"must* provide for no less than a regular mortgage payment"; that a recommendation by HUD's field office to foreclose a mortgage must be "fully supportable" and "have supervisory review and approval"; that it is possible to suspend or terminate foreclosure even after assignment to the foreclosure agent; and that a valid reason for suspending or terminating foreclosure is the filing of a bankruptcy petition. Handbook # 4335.2 chapter 5, at 5–1, 5–3(A)(5), 5–4, 5–6(A)(1).

I conclude that Handbook # 4335.2's provisions are consistent with the terms of the *Ferrell* consent decree and are as binding on HUD as Handbook # 4330.2's provisions are. In reaching that conclusion, I find it significant that HUD agreed in the consent decree to "administer the assignment program substantially in accordance with the terms" of Handbook # 4330.2, and that Handbook # 4335.2 concerns HUD's administration of that assignment program. Indeed, HUD administers the program under Handbook # 4335.2 in accordance with Handbook # 4330.2's terms. Referring explicitly to standards in

a *Ferrell* decree stipulation that Handbook # 4330.2's policies and terms inform, Handbook # 4335.2 expresses HUD's desire that "equivalent" standards apply. That desire is significant because, as noted above, parties to the *Ferrell* decree stipulated that after 1984 HUD would "provide assistance or relief in the form of the present assignment program or an *equivalent substitute* to permit mortgagors in default on their mortgages to avoid foreclosure and to retain their homes during periods of temporary financial distress."

In sum, I am satisfied that Handbook # 4335.2's provisions set forth an "equivalent substitute" for the post-assignment assistance and relief that the parties to the *Ferrell* decree contemplated. Hence, evidence that HUD has acted inconsistently with Handbook # 4335.2 and its underlying national housing policies of foreclosure avoidance and providing of decent homes for all citizens will require the court to hold unlawful and set aside HUD's action or to compel HUD to take remedial action.

B. *Chapter 13*

The court now turns to an issue that only one other court has squarely addressed: the point in foreclosure proceedings at which a mortgagor relinquishes HUD assignment program rights and the ability to cure assignment program arrearages pursuant to 11 U.S.C. § 1322(b)(5).[10]

A creditor's claim that is secured only by a security interest in real property that is used as a debtor's principal residence may not be "modified" under a Chapter 13 plan. 11 U.S.C. § 1322(b)(2). Nevertheless, such a creditor is stayed from collection of its claim, 11 U.S.C. §§ 362(a)(1) and (2), from taking possession of the real property encumbered by the lien, 11 U.S.C. § 362(a)(3), and from enforcement of its lien, 11 U.S.C. §§ 362(a)(4) and (5).

Before proceeding with all such actions, the creditor must obtain relief from the automatic stay. However, there is no stay of the bankruptcy court's determination of

the allowed secured claim, 11 U.S.C. § 506, since such a determination does not modify the creditor's rights. Finally, the Chapter 13 plan may provide for the "curing of any default" on the creditor's claim that is secured only by a security interest in real property used as the debtor's principal residence. Such defaults may be cured on either short-term mortgages, 11 U.S.C. § 1322(b)(3), or long-term mortgages on which the final payment is due after the due date of the final payment under the Chapter 13 plan, 11 U.S.C. § 1322(b)(5). *See 3 Collier Bankruptcy Manual* ¶ 1322.06.[a] (3d ed.1989).

Section 1322(b) provides in part as follows:

[A Chapter 13] plan may—

... (2) *modify* the rights of holders of secured claims, *other than* a claim secured only by a security interest in real property that is the debtor's principal residence ...;

(3) provide for the *curing or waiving of any default;*

... (5) *notwithstanding paragraph (2)* of this subsection, provide for the *curing of any default* within a reasonable time *and maintenance of payments* while the case is pending on any unsecured claim *or secured claim on which the last payment is due after the date on which the final payment under the plan is due.*

11 U.S.C. §§ 1322(b)(2), (3) and (5) (emphasis added).

As the Court of Appeals for the Third Circuit has stated, "cures" or "waivers" are not considered "modifications" of claims, and "neither the power to cure under § 1322(b)(3) nor the power to cure under § 1322(b)(5) is limited by the provision of § 1322(b)(2) prohibiting modification of home mortgages." *Matter of Roach*, 824 F.2d 1370, 1376 (3d Cir.1987); *see also 3 Collier Bankruptcy Manual* ¶ 1322.07.[2] (3d ed.1989).

---

10. The same issue was raised and resolved in *In re Santos*, 97 B.R. 227, 236–37 (Bankr.E.D.Pa. 1989).

Section 1322(b)(5) is specifically concerned with relatively long-term debt. It permits a debtor to take advantage of a contract repayment period that is longer than the Chapter 13 extension period, which may not exceed five years. Hence, the right to cure defaults pursuant to § 1322(b)(5) results in no reduction of total or regular monthly payments to the secured creditor and is conceptually distinct from a Chapter 13 cramdown, which allows a debtor to modify secured creditors' rights by making reduced payments over the limited term of the plan. *See* 3 *Collier Bankruptcy Manual* ¶ 1322.09.[1], [4] (3d ed. 1989).

Generally, when defaults are cured pursuant to § 1322(b)(5), arrearages are paid through the trustee over the life of the plan, and regular monthly mortgage installments are paid directly to the mortgagee outside the plan. *See, e.g., Appeal of Capps*, 836 F.2d 773, 774 (3d Cir.1987); *Matter of Roach*, 824 F.2d 1370, 1371 (3d Cir.1987); 3 *Collier Bankruptcy Manual* ¶ 1322.09.[3] (3d ed.1989).

The "arrearage" or "cure" figure is to be distinguished from the "payoff figure." In a bankruptcy proceeding involving HUD's Mortgage Assignment Program, the payoff figure is HUD's allowed secured claim and equals the amount needed to pay the mortgage balance in full as of the date the bankruptcy petition is filed. *In re Santos*, 97 B.R. 227, 229 (Bankr.E.D.Pa.1989). The arrearage figure, on the other hand, is the sum of all prepetition funds that should have been paid to HUD in accordance with the Mortgage Assignment Program. *Id.* at 231. Included in the arrearage figure, therefore, are unpaid charges for the following: interest and principal due during both the thirty-six month forbearance period of reduced payments and the post-forbearance prepetition period of full payments; mortgage service between the commencement of the forbearance period and the filing of the petition; and tax advances made between the commencement of the forbearance period and the filing of the petition. *Id.* at 232–33.

Not included in the arrearage figure are missed pre-assignment and pre-forbearance period principal, interest, and escrow payments in addition to charges forborne and suspended during the thirty-six month forbearance period. Those sums are part of the payoff figure and are to be added to the principal mortgage balance to be repaid outside the Chapter 13 plan. *Id.* at 232.

Of course, claims such as those for the Chapter 13 trustee's commission and HUD's postpetition tax payments have priority under the debtor's plan pursuant to 11 U.S.C. § 1322(a)(2).

What the court must decide now is how late in the mortgage foreclosure process is too late for a HUD assignment program mortgagor to deaccelerate her mortgage, cure her prepetition post-assignment arrearages, and maintain her assignment program rights.

In *Roach*, the Court of Appeals considered whether § 1322(b) evinces a congressional intent to authorize cure of a default on a *non*-assignment program home mortgage after there has been a contractual acceleration of the full mortgage debt, a foreclosure judgment, and a foreclosure sale, as long as the state law redemption period has not expired.

Following the principles expressed in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the court emphasized that Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law, *"absent a countervailing federal interest"* or a conflict with bankruptcy law. *Matter of Roach*, 824 F.2d 1370, 1374 (3d Cir.1987). Finding no such federal interest or conflict, the *Roach* court noted that the mortgaged property was in New Jersey. *Id.* at 1373. Therefore, the court reasoned, if New Jersey law provided that the agreement had terminated, the mortgagor would have no right to resurrect the mortgage agreement through a bankruptcy filing. *Id.* at 1377. The court then looked to New Jersey law and stated as follows:

When a debtor files a Chapter 13 petition in New Jersey and proposes a plan attempting to utilize the authority of

§ 1322(b)(5) after the entry of a fore-closure judgment, *no contractual rela-tionship remains* and the mortgagee's rights are those that arise from its judg-ment. In New Jersey, as in many states, *the mortgage is merged into the final judgment of foreclosure and the mort-gage contract is extinguished*.... As a result of this merger, there is no longer a mortgage to be cured and restored and the authority conferred by § 1322(b)(5) is simply inapplicable.

*Id.* (emphasis added); *see also In re Her-bert,* 86 B.R. 433, 436 (Bankr.E.D.Pa.1988) (holding that under Pennsylvania law, just as under New Jersey law, "[t]he mortgage is merged in a judgment entered in a mort-gage foreclosure action" and the mortgage contract is thereby extinguished).

"Countervailing federal interests" are implicated, however, where HUD holds un-der the Mortgage Assignment Program the mortgage that is proposed to be cured pur-suant to § 1322(b)(5). *See In re Santos,* 97 B.R. 227, 236 (Bankr.E.D.Pa.1989). In such cases, unlike in *Roach, federal* non-bankruptcy law determines the point at which the mortgagor's rights under the assignment program terminate. *Id.*

The bankruptcy court in *In re Santos* was similarly confronted with the dilemma of ascertaining when that point occurs. That court concluded that HUD regula-tions, HUD Handbook # 4330.2, and deci-sional law all fail to address the dilemma. *Id.* The bankruptcy judge, therefore, looked to *Roach,* national housing policy, and trial testimony on HUD internal proce-dures and ruled:

> [National Housing] policy is better real-ized by concluding that the mortgagor's assignment program rights are irrevoca-bly lost later rather than earlier in the foreclosure process. Exactly where in the process this would occur I need not decide; I need only conclude, as did HUD's own witness, that the loss of rights does not occur with the first accel-eration notice.

*Id.* at 237.

The court in *Santos* did not consider HUD Handbook # 4335.2, however. Sig-nificantly, Handbook # 4335.2 provides that "the period between the sending of the [Notice of Intention to Foreclose] and the actual referral of a case to foreclosure is *not* the last opportunity for resolution." Handbook # 4335.2 chapter 5, at 5–3. Moreover, the Handbook states that even after HUD's field office recommends fore-closure to the agency's Office of General Counsel, foreclosure proceedings can be suspended if a bankruptcy petition is filed or "fruitful negotiations" with the mortga-gor occur, and can be terminated if "[t]he mortgagor performed adequately under *and* outside of the bankruptcy plan." Handbook # 4335.2 chapter 5, at 5–6(A) and (B).

While mindful of Handbook # 4335.2's directives, I would be remiss were I not to view those directives in the light of the national housing policy that informs them and to which the court in *Santos* accorded such weight. As noted above, that policy requires a program of "foreclosure avoid-ance relief" for mortgagors who without HUD assistance would, by virtue of their economic status, find it tremendously diffi-cult to remain current under their mort-gage agreements.

> This difficulty does not end when the mortgage is granted; nor does it neces-sarily end when the assignment is grant-ed. Consistent with the goal of decent and affordable housing for all is the rec-ognition that if the mortgagor can repay HUD all missed prepetition payments un-der the assignment program and remain current on requisite postpetition pay-ments, both HUD and the homeowner benefit. HUD's benefit stems from avoiding the costs associated with fore-closing, as well as owning property often left vacant and vandalized. The mortga-gor benefits by retaining decent housing.

*In re Santos,* 97 B.R. at 237.

Consistent with that policy and with Handbook # 4335.2, I conclude that a mortgagor's rights under HUD's Mortgage Assignment Program retain vitality at least until a foreclosure judgment is en-tered. HUD's directives that foreclosure proceedings not terminate such a mortga-

gor's rights where there is good reason to believe that the mortgagor will cure her defaults and remain current in her regular payments, as well as national housing policy counselling foreclosure avoidance for assignment program mortgagors who are delinquent on their mortgage payments, compel such a conclusion. Therefore, an assignment program mortgagor may file a Chapter 13 petition, and propose a plan to deaccelerate her mortgage and cure assignment program arrearages pursuant to § 1322(b)(5), until a foreclosure judgment is entered.

The selection of the foreclosure judgment's entry as the *terminus ad quem* of an assignment program mortgagor's rights is not a mere parroting of the Court of Appeals' resolution in *Roach.* That court looked to state property and contract law and focused upon the point when, under that law, a non-assignment program mortgage contract was deemed extinguished. A court considering a proposed deacceleration and cure of an assignment program mortgage, however, is more concerned with the mortgagor's equitable rights under the NHA than with the question of when property and contract law declare the mortgage dead. Because there is generally a significant period between HUD's sending to an assignment program mortgagor a Notice of Intention to Foreclose and the agency's obtaining a foreclosure judgment, and because HUD has an interest in finality and in being able to apply foreclosure proceeds to its insurance fund, equity dictates that a mortgagor's rights under the program terminate upon entry of foreclosure judgment and that a bankruptcy petition not thereafter revive those rights. A mortgagor may, of course, contend that her case proceeded with unusual speed to foreclosure and judgment and that HUD would not be prejudiced by a revival of rights after the entry of foreclosure judgment. But a court should grudgingly resurrect such rights after the judgment date, and the defense of laches would apply. *See Waddell v. Small Tube Prods., Inc.,* 799 F.2d 69, 74–75, 79 (3d Cir.1986) (elements of laches are (1) lack of diligence by party against whom defense is asserted, and (2)

prejudice to party asserting defense); *Equal Employment Opportunity Comm'n v. Great Atlantic & Pacific Tea Co.,* 735 F.2d 69, 80 (3d Cir.1984) (same).

C. *Plaintiff States Legally Sufficient Claims*

■ Accepting as true all allegations in plaintiff's complaint and brief and all reasonable inferences that can be drawn therefrom, the court holds that plaintiff does state claims against HUD upon which relief can be granted.

Plaintiff plainly alleges that Lomas is HUD's agent, that HUD retains an interest in the subject mortgage, and that HUD exercises ultimate control over the foreclosure proceedings. Although plaintiff has received the full thirty-six months of forbearance to which she is entitled under the assignment program, she avers that HUD never attempted to arrange for her a post-forbearance period repayment program with at least full monthly mortgage payments. Such a program is a mortgagor's right under the assignment program. Neither did HUD perform its duty to consider whether to extend the 1999 maturity date by up to ten years. Thus, plaintiff states a legally sufficient claim that HUD "unlawfully withheld" action that HUD Handbooks and regulations require, and that HUD "abused its discretion" and acted illegally when it disregarded Handbook # 4335.2, removed plaintiff from the assignment program, and assigned plaintiff's mortgage to foreclosure agent Lomas.

Moreover, because she does not allege that a foreclosure judgment has been entered on her mortgage, plaintiff states a legally sufficient claim that her assignment program rights retain vitality. Plaintiff has, therefore, sufficiently alleged a right to deaccelerate her mortgage and to cure under her plan post-assignment prepetition arrearages pursuant to § 1322(b)(5).

Given plaintiff's naked averments and brief, the specific relief that plaintiff seeks can be granted as a matter of law. Lomas's claim can be disallowed, HUD can be ordered to accept reassignment of plaintiff's mortgage and to restore her to active

participation in the assignment program, HUD can be ordered to consider a repayment program, and HUD's bankruptcy claims can be limited to those that the agency's Handbooks countenance and that bankruptcy law permits. Hence, plaintiff has stated claims against HUD upon which relief can be granted.

## IV. CONCLUSION

HUD's motions to dismiss for lack of jurisdiction over the subject matter, lack of jurisdiction over the person, and failure to state a claim upon which relief can be granted will be denied.